THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD A. HART, Defendant-Appellant.

Fifth District   No. 5—94—0424

Opinion filed February 8, 1996.

Charles H. Stegmeyer, of Stegmeyer & Stegmeyer, of Belleville, for appellant.

Darrell Williamson, State's Attorney, of Chester, and J. Stephen Bennett, of Norris City (Norbert J. Goetten and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

After a bench trial in the circuit court of Randolph County, defendant, Richard A. Hart, was convicted of aggravated home repair fraud. 815 ILCS 515/3(a)(1) (West 1992). On appeal, defendant raises two issues: (1) whether a mobile home is a structure protected under the Home Repair Fraud Act (the Act) (815 ILCS 515/3(a)(1), 5(a) (West 1992)), and (2) whether defendant was proved guilty beyond a reasonable doubt. We affirm.

## FACTS

Defendant, a self-employed construction worker who operated a business known as R&M Construction, entered into a written contract on September 20, 1993, with the victim, Gloria Abbey, age 65, and her husband to make repairs to their mobile home. Defendant and the victim were introduced by Thomas Chappell, a friend of the victim for approximately 10 years. Defendant performed household repairs for Chappell and, upon completion of that job, inquired of Chappell whether he knew anyone who needed home repairs. As a result of this request, Chappell introduced defendant to the victim and her husband.

Defendant and the victim entered into a written contract which was written on paper bearing the heading "R&M Construction." Beneath this heading, the language "Insured and Licensed" appeared. Also in the heading appeared defendant's name, a telephone number, and an address. However, the telephone number and the address were scratched out. The contract specifically stated: "[Defendant] will tear out old counter top, old sink and faucet. Replace with new sink and faucet. Will repair hand rail by putting 4 x 4 concrete and replace top rails. Repair roof." The victim made a deposit of $800 to defendant at the time the contract was signed. $150 was due and owing upon completion of the work. The victim testified that the heading at the top of the contract which stated that defendant was licensed and insured was important to her. The victim explained that she preferred a contractor who was insured because if someone who was not insured fell off her roof she would have to pay.

Defendant ordered the countertops from Buchheit's, a local hardware store. According to the victim, the only work performed by defendant was to order the countertops, which required defendant to make a $100 deposit. When the countertops arrived, it was discovered that they were not cut correctly and did not fit the victim's kitchen. The victim also testified that sometime after the contract was signed, defendant told her he could not fix the roof unless she paid him an additional $35 in order to buy two cans of coating, which the victim refused to do.

On cross-examination, the victim testified concerning her mobile home. She stated that she was presently satisfied with the mobile home park where the home was now located, but if she did not like it, she could easily put wheels on her mobile home and have it moved elsewhere. The victim admitted that she was aware that there would be a delay in getting the countertops because they had been cut incorrectly. She also admitted that it was not defendant's fault the countertops did not fit.

Steven Saunders, an employee of Buchheit's, testified that the countertops ordered by the victim were delayed twice through no fault of defendant. He further testified that defendant worked with the store and the victim in an attempt to accommodate the victim.

The State introduced into evidence a certified copy from the Department of Regulation which explained that defendant's license to repair roofs was cancelled August 31, 1992, and that defendant's insurance expired on June 1, 1992.

Mary O'Guinn, defendant's fiancee, testified on behalf of defendant. She stated that she was present when the contract in question was signed and that the victim was made aware that defendant was neither insured nor licensed. O'Guinn testified that she and defendant met with the victim four times and called the victim seven times to explain the delays. She also explained that defendant wanted to do the repairs all at once rather than in a piecemeal fashion. O'Guinn testified that the victim knew that defendant ordered a sink because the victim saw the new sink at defendant's residence. O'Guinn testified that defendant was not able to do the job because he was in jail when the correct countertops arrived.

Defendant testified that he formed R&M Construction to perform roofing jobs and that a license was not necessary for all roofing jobs. Specifically, defendant believed that the job he was to perform for the victim, removing dents from her metal roof caused by someone walking on it, did not require a license. Defendant testified that he did not intend to mislead the victim concerning insurance or licensing and that he did all he could to perform the tasks he was hired to

perform. Defendant explained that the kitchen countertops were delayed for more than 16 days from the date he placed the original order and that when they finally arrived they were cut improperly, causing a further delay. Defendant testified that when the correct countertops arrived, he was in jail and was unable to perform the contract. Defendant testified that he purchased all the necessary materials to complete the job. Defendant did not have the receipts for such purchases at trial. Defendant paid a $100 deposit on the countertops.

Leonard Gladson, chief of police at Steeleville, testified that the victim called him about the problem she was experiencing with defendant. Accordingly, Gladson called defendant, and defendant and he then went to the victim's home to discuss the situation. Gladson testified that it was obvious to him the countertops would not fit. Defendant and the victim then decided to go to Buchheit's together to correct the situation.

On rebuttal, the victim testified that neither defendant nor his fiancee ever mentioned that defendant was not licensed or insured. The State also produced June Plemmer, age 65, who testified that she, too, recently contracted with defendant to fix her roof and that defendant never told her that he was not licensed or insured.

At the close of the evidence, the trial court found defendant guilty. The trial court explained that there was "far less in the way of proof than what would be required in order to find a defendant guilty of anything having to do with the counter top" not being installed. The trial court was "of the opinion that the delay with the counter tops would appear to have been attributable to circumstances beyond the control of [defendant]." However, the trial court found that the specific charge brought against defendant, namely, that he knowingly misrepresented himself as being a licensed and insured contractor, was proved beyond a reasonable doubt. The trial court ordered a presentence investigation, and a sentencing hearing was later conducted after which defendant was sentenced to two years' probation and ordered to pay restitution in the amount of $704.67. Defendant now appeals his conviction.

## ISSUES

■ The first issue we are asked to consider is whether a mobile home is a structure protected under the Act. Defendant argues that the victim's mobile home was neither real property nor a residence as defined by the Act and, thus, a necessary element of the crime was missing. Accordingly, defendant contends that his conviction must be reversed. The State replies that a mobile home is real property

designed or used as a residence and is protected by the Act where, as here, the mobile home was affixed to the land and was a dwelling place. We agree with the State.

The Act provides, in pertinent part:

"§ 3. Home Repair Fraud.

(a) A person commits the offense of home repair fraud when he knowingly enters into an agreement or contract, written or oral, with a person for home repair, and he knowingly:

(1) Misrepresents a material fact relating to the terms of the contract or agreement or the preexisting or existing condition of any portion of the property involved, or creates or confirms another's impression which is false and which he does not believe to be true, or promises performance which he does not intend to perform or knows will not be performed." 815 ILCS 515/3(a)(1) (West 1992).

In the definition section of the statute, home repair fraud is defined as follows:

"(a) 'Home Repair' means the fixing, replacing, altering, converting, modernizing, improving of or the making of an addition to any *real property* primarily designed or used as a *residence.*" (Emphasis added.) 815 ILCS 515/2(a) (West 1992.)

While real property is not defined by the Act, the term "residence" is. " 'Residence' means a single or multiple family *dwelling, including but not limited to* a single family home, apartment building, condominium, duplex or townhouse which is *used or intended to be used by its occupants as their dwelling place.*" (Emphasis added.) 815 ILCS 515/2(c) (West 1992).

In the instant case, the victim testified that she and her husband lived in the mobile home located at No. 42 Ervin Street in Steeleville for three years prior to the time of trial. The wheels from the mobile home were removed, and the victim and her husband were satisfied with the mobile home, its location, and their neighbors. The victim and her husband had added a deck onto their mobile home, complete with a roof connecting the deck and the mobile home.

There is no question that a mobile home is a "structure designed for permanent habitation." 210 ILCS 115/2.1 (West 1992). Preliminarily, we take judicial notice of the fact that our General Assembly has determined that there is a shortage of low-cost housing of the type provided by mobile home parks and that mobile homes in general provide a comfortable dwelling at a low cost. *Oak Forest Mobile Home Park, Inc. v. City of Oak Forest*, 27 Ill. App. 3d 303, 316, 326 N.E.2d 473, 483 (1975). Our General Assembly specifically stated in this regard:

"§ 1. The General Assembly of Illinois finds: (1) that there is a

serious housing shortage in this state; (2) that rising costs in the building construction field has [sic] seriously impeded the building of new housing, particularly for moderate and low income citizens; (3) that the existing housing stock is continuously depleted through demolition resulting from aging buildings, urban renewal, highway construction and other necessary public improvements; (4) that advances in the construction of mobile homes has [sic] significantly increased the importance of this mode of housing; (5) that through proper regulation and licensing mobile homes can contribute to the quality housing of Illinois citizens." 210 ILCS 115/1 (West 1992).

That the General Assembly believes that a mobile home is a residence is clear. We also conclude, from the statutory language of sections 2(a) and (c) of the Act and those words given emphasis, that the General Assembly intended dwellings to be covered by the Act. The status of a dwelling is the characteristic used to define "residence," and the list of examples is not exclusive. We cannot agree with defendant's contention that, since a mobile home is not specifically named in the Act, persons living in such a dwelling are not entitled to the Act's protection. Instead, we hold that a mobile home is a structure protected under the Act.

■ The second issue raised by defendant is whether he was proved guilty beyond a reasonable doubt. Defendant argues that no evidence was presented to show that R&M Construction was a company that was no longer in business and that there was no evidence produced to show that the victim was misled about the terms of the contract or that she was influenced to enter the contract based upon whether defendant's company was licensed or insured. The State replies that defendant was proven guilty beyond a reasonable doubt of aggravated home repair fraud because the evidence established that defendant knowingly entered into a written contract with the victim, age 65, for the repair of her mobile home and misrepresented a material fact, namely, that he was an insured and licensed contractor, when in fact R&M Construction was no longer insured or licensed. Again, we agree with the State.

When an appeals court reviews the sufficiency of the evidence, " 'the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Young*, 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472 (1989), quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89 (1979); *People v. Williams*, 209 Ill. App. 3d 709, 724, 568 N.E.2d 388, 397

(1991). It is not this court's function to retry the defendant. *People v. Eyler*, 133 Ill. 2d 173, 191, 549 N.E.2d 268, 276 (1989). The determination of the weight to be given to witnesses' testimony, their credibility, and the reasonable inferences to be drawn from the evidence is the responsibility of the fact finder. *People v. Steidl*, 142 Ill. 2d 204, 226, 568 N.E.2d 837, 845 (1991). A reviewing court may not substitute its judgment for that of the trier of fact on questions concerning the weight of the evidence or the credibility of the witnesses but will reverse only if the evidence is so improbable, impossible, or unsatisfactory as to raise a reasonable doubt of defendant's guilt. *People v. Winfield*, 113 Ill. App. 3d 818, 447 N.E.2d 1029 (1983).

A person commits the offense of aggravated home repair fraud when he knowingly enters into an agreement or contract, written or oral, with a person 60 years of age or older for home repair and knowingly misrepresents a material fact relating to the terms of the agreement or contract. 815 ILCS 515/3(a)(1), 5 (West 1992). The original information filed by the State in this case alleged that defendant violated the Act "in that [defendant] represented that he was acting as R&M Construction, an insured and licensed contractor, when the company was no longer in business." Prior to trial, the State amended its information and alleged that defendant violated the Act "in that [defendant] misrepresented that he was acting as R&M Construction, an insured and licensed contractor, when the company was no longer insured or licensed." Therefore, the State was required to prove that defendant was no longer licensed and insured and that such a fact was "a material fact relating to the terms of the contract or agreement." 815 ILCS 515/3(a)(1) (West 1992).

At trial, the evidence established that the victim, age 65, contracted with defendant for work to be done to her mobile home, including roof and kitchen repairs. The victim paid defendant $800 in advance. The victim became concerned when defendant failed to begin the work promptly. Soon after, she called the license bureau and discovered that defendant was not a licensed contractor. The written contract prepared by defendant specifically stated that defendant was a licensed and insured contractor. The victim testified that she took note of the language identifying defendant as a licensed and insured contractor and that this representation was important to her in electing to use defendant as the contractor. At trial, the State produced certification from the Department of Professional Regulation explaining that defendant's roofing contractor's license expired because defendant allowed his insurance to expire. Moreover, defendant admitted at trial that he was no longer licensed and insured. The trial court did not find that defendant's failure to complete the

contract was cause for conviction but instead reasoned that defendant's misrepresentation that he was licensed and insured was a material fact which the victim relied on in entering into the contract. After review of the record, we cannot say that the trial court erred.

For the foregoing reasons, the judgment of the circuit court of Randolph County is affirmed.

Affirmed.

WELCH and KUEHN, JJ., concur.