No. 2--01--1445     

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF        
 )  Appeal from the Circuit Court

ILLINOIS,   )  of Du Page County.

   )  

Plaintiff-Appellee,   )

   )  

   )  No. 00--CF--2651  

   )   

HARRY FLYNN,   )  Honorable

   ) Perry R. Thompson,

Defendant-Appellant.         ) Judge, Presiding.

JUSTICE GROMETER delivered the opinion of the court:

Following a jury trial in the circuit court of Du Page County, defendant, Harry Flynn, was convicted of one count of theft (720 ILCS 5/16--1(a)(2)(A) (West 2000)) and one count of home repair fraud (815 ILCS 515/3(a)(2) (West 2000)).  On appeal, defendant argues that this cause must be remanded for further proceedings because the trial court failed to rule on his posttrial motions.  Alternatively, defendant asserts that (1) the trial court's evidentiary rulings deprived him of a fair trial; (2) his convictions of both home repair fraud and theft violate the one-act, one-crime rule; and (3) the State failed to prove him guilty beyond a reasonable doubt of home repair fraud and theft.  For the reasons that follow, we affirm defendant's theft conviction and sentence and vacate his home repair fraud conviction and sentence.

I. BACKGROUND

On or about September 29, 2000, a grand jury returned a two-count indictment charging defendant with home repair fraud (815 ILCS 515/3(a)(2) (West 2000)) and theft (720 ILCS 5/16--1(a)(2)(A) (West 2000)).  Defendant was represented at trial by a public defender.

Defendant's trial commenced August 14, 2001.  Timothy Howard testified that he owns a two-story residence with an attached deck in Naperville.  In March 2000, Timothy's wife, Katherine, contacted three contractors about replacing the deck with a larger structure.  Late in March, Timothy and Katherine met with defendant at their home.  Defendant introduced himself as "Joe Flynn" and purported to be a representative of a company known as Design Dimensions.  Timothy characterized defendant's approach to the project as "appealing."  Defendant told the Howards that, because he was a carpenter, he could do anything they wanted.  Defendant also offered to save the Howards money by sanding down the existing structure instead of replacing it.  This would allow the Howards to build a larger canopy over the deck.  Other contractors told the Howards that the sanding method was not feasible.  After considering presentations from all three contractors, the Howards decided to hire defendant.  As Timothy explained, "We felt we could get closer to what we really wanted with [defendant] *** even though he was more expensive."

On April 1, 2000, the Howards met with defendant to finalize the contract.  The contract listed a telephone number for Design Dimensions, but no address.  The Howards inquired why the signature line on the contract listed defendant as "Harry Flynn dba DESIGN DIMENSIONS."  Defendant explained that because he shares his birth name (Harry) with his father, he goes by the name of Joe.  The Howards tendered defendant a check for $2,445 payable to "Harry Flynn."  This deposit represented slightly more than 50% of the project's cost.  Defendant agreed to begin construction on May 8, 2000, and told the Howards that the project would be completed in five to eight days, depending on the weather.  Although the contract provided that it was the homeowner's responsibility to obtain any necessary permits, defendant offered to procure the permits for the Howards.  To that end, Timothy provided defendant with a plat of survey.  Moreover, in the Howards' presence, defendant completed the documents needed to obtain a permit, which Timothy signed and dated.

Late in April, the Howards left on a work-related trip.  Their daughter, Alisa, remained at the home.  When the Howards returned on May 10, they discovered that work on the deck had not yet begun.  Beginning in June, Timothy made the first of at least four telephone calls to defendant.  The calls were never answered by a person, and no one ever returned Timothy's messages.  Eventually, the Howards contacted the police department.  On July 25, 2000, Timothy drafted a letter to defendant.  The Howards were unable to locate an address for Design Dimensions, but the police delivered the letter to defendant.  In the letter, Timothy cancelled the contract and requested the return of his money.  Timothy never received a response.  Timothy offered that no materials were ever delivered to his home and no subcontractor ever came to work on the project.  However, Timothy admitted that he saw markings suggesting that J.U.L.I.E.
(footnote: 1) had been to his property.

On cross-examination, Timothy testified that defendant presented him and his wife with a book containing photographs of work defendant had allegedly done and gave them directions to a home where he claimed to have built a deck similar to the one requested by the Howards.  Timothy also believed that it was defendant who contacted J.U.L.I.E. to mark his property.

Katherine Howard's testimony corroborated that of her husband.  In addition, she testified that she contacted Design Dimensions after seeing an advertisement for the company in a local newspaper.  Katherine estimated that she attempted to contact defendant by telephone between 8 and 10 times during the month of May.  Each time she left a message, but defendant never responded.  Katherine acknowledged that, prior to leaving on the business trip in April, she saw people marking her property with spray paint.

Alisa Deer, the Howards' daughter, testified that she lived in her parents' Naperville home from February 1998 through July 2000.  Because the Howards expected to be out of town on the date defendant was scheduled to start the deck project, they asked Alisa to remain around the home while the work was done.  Alisa complied, leaving the house only for a half hour each morning and a half hour each evening in order to take her son to and from day care.  Alisa testified that she never observed any work being done on the deck between May and July 2000.  In addition, Alisa never received or took phone messages from anyone identifying himself as defendant or as being affiliated with Design Dimensions.

Louis Fortino, a plan examiner with the City of Naperville,  testified that the city requires homeowners to obtain a permit to add a deck to a house.  The city generally issues a permit three to seven calendar days after it receives all necessary documentation, including two copies of the plat of survey.  Fortino identified a computer printout dated February 8, 2001, showing that a permit dated in 1987 was the only permit issued by the city for the Howards' address.

Colleen Cannella testified that she was involved in a relationship with defendant from March 1999 until July 2000.  From May 1, 2000, until the end of the relationship, Cannella lived with defendant.  During the relationship, Cannella learned about defendant's record-keeping system and the Howards' project.  Canella identified a file folder containing documents related to the Howards' project, including a plat of survey, which she found in a closet in the home she shared with defendant.  Cannella never observed defendant buy or store any building materials at their home.  Cannella testified that defendant never told her that he had finished the Howards' project.  Cannella also stated that defendant never "looked like he had been laboring" when he would return home.

At defendant's request, Cannella opened two bank accounts between April and July 2000, one at MidAmerica Bank and the other at Prairie Bank in Plainfield.  Although she was a cosigner on the accounts, Cannella testified that she never withdrew money from the accounts.  In June 2000, the police department contacted Cannella to ask her questions regarding defendant.  In November 2000, Cannella received a letter written by defendant.  The letter, which was admitted into evidence, expresses "appreciation" for Cannella's role as a "snitch/stoolpigeon."

The parties then entered into two stipulations.  First, the parties stipulated that, if called to testify, the keeper of records of MidAmerica Bank would provide a foundation for the admission of bank records pertaining to an account opened by defendant and Cannella on April 3, 2000.  Second, the parties stipulated that, if called to testify, the keeper of records of Prairie Bank would provide a foundation for the admission of bank records pertaining to an account opened by defendant and Cannella on April 15, 2000.  The State rested, and the trial court denied defendant's motion for a directed verdict.

Defendant testified that he has been a construction worker and carpenter since the 1960s.  Defendant identified an album containing photographs of projects he had completed, which he shows to prospective clients.  In the spring of 2000, defendant placed an advertisement in a local newspaper for Design Dimensions, the name under which he operates.

After accepting the Howards' check, he told them he would start the project the week of May 8.  Defendant testified that in order to obtain a building permit, he needed to submit a plat of survey to the city.  At one time, defendant testified that he never saw the Howards' plat of survey before it was introduced at trial.  However, he also stated that he received a plat of survey after the Howards returned from their trip and that the city informed him that permit approval takes a week to 10 days.  Defendant also noted that the Howards' contract contains a line indicating whether the owner has a plat of survey.  This item was not "checked" on the contract because the Howards could not locate the plat of survey on April 1, 2000, when the contract was executed.

Defendant testified that there was some work he could do on the Howards' project despite the lack of a permit.  For example, defendant testified that he contacted J.U.L.I.E. on May 6 or 7, and that when he went by the house on May 11 or 12, there were markings on the ground.  In addition, during the third week of May, defendant rang the Howards' doorbell to inform them that he was going to prepare the existing deck for sanding by countersinking all the nails.  Although no one answered the door, defendant began countersinking the nails.  He was unable to finish the task because the heads of the nails would pop off as he attempted to drive them into the wood and because it started to rain.  As defendant left the premises, he ran into an unidentified man.

Defendant explained that he did not return the Howards' telephone calls because he was experiencing problems with his phone service.  Defendant acknowledged receiving Timothy's June 25 letter.  In response, he called his home to instruct Cannella to remit a cashier's check to the Howards.  However, an unidentified person answered the telephone instead of Cannella.  Defendant admitted that he has taken no steps to contact the Howards since July 1, 2000.  He also conceded that in 1995 he had been convicted of three counts of home repair fraud.

On cross-examination, defendant testified that the only time he met with the Howards was on April 1, 2000.  At that time, they agreed to hire him and signed the contract.  Defendant drafted the contract himself, and it was the typical form contract he used at Design Dimensions.  Despite language in the contract requiring the homeowner to obtain the necessary permits, defendant agreed to obtain the permits as a courtesy to the Howards.

Sergeant David Lee Taggart of the Du Page County sheriff's department testified that he was assigned to the corrections bureau.  While defendant was housed at the Du Page County jail, another law enforcement agency asked Taggart to prohibit defendant from phoning a number that defendant had been trying to call.  Taggart did not know the identity of the person defendant was trying to reach.

On August 14, 2001, following closing arguments, the jury returned a verdict of guilty on both counts.  On September 13, 2001, defense counsel filed a motion for judgment notwithstanding the verdict or a new trial.  The following day, defendant filed two 
pro se
 motions.  The first motion was captioned "Motion to Arrest Judgment," the second, "Motion Claiming Ineffective Assistance of Counsel."  At a hearing on September 17, 2001, the trial court entered orders granting the public defender leave to withdraw as defense counsel, withdrawing defense counsel's posttrial motion, and appointing Gene Ognibene to represent defendant on his posttrial motions.

On September 26, 2001, defendant filed a 
pro se
 "Motion of Recusal."  On October 15, 2001, the trial court allowed Ognibene to withdraw due to a conflict of interest and appointed Patrick Provenzale in his stead.  Defendant told the court that he would prefer to defend himself.  The trial court reminded defendant that he had some posttrial motions pending.  The following colloquy then ensued:

"DEFENDANT FLYNN: I know, there is no problem.  I won't really care after the sentencing because I will either go to DOC or I will go to Will County, which [
sic
] I got the jury trial.

THE COURT: I appreciate that.

DEFENDANT FLYNN: I got that next month.  I want to get sentencing closure on Du Page.

THE COURT: Okay.  But you agree with me that you filed a whole lot of motions.

DEFENDANT FLYNN: Yes, I did.

THE COURT: Okay.  And--

DEFENDANT FLYNN: But that wouldn't be applicable if there is no appeal and I wouldn't appeal unless there is extended term.

THE COURT: Well, okay, I don't know what's going to happen.  You don't know what's going to happen except you know your perimeters
.

DEFENDANT FLYNN: That's correct.

THE COURT: But you got a whole bunch of stuff here that challenges the trial.  If you want to withdraw them, fine, but I got to act on them.  What I'm suggesting is--when is your trial set in Will?

DEFENDANT FLYNN: November 17, your Honor.

THE COURT: Well, what if we get this resolved before that?

DEFENDANT FLYNN: That would be fine.  As long as I'm sentenced and there is closure here.

* * *

THE COURT: [Mr. Provenzale will] come see you right away.  You talk about it.  If you want to end it, fine, we'll do it, but you get at least some legal advice."

The court continued the matter until November 9, 2001.

On November 5, 2001, defendant filed a 
pro se
 motion for judgment notwithstanding the verdict or a new trial.  On November 9, 2001, the matter was continued to November 28, 2001.  Meanwhile, on November 20, 2001, Provenzale informed the trial court that defendant wished to proceed 
pro se
.  Defendant told the trial court that he would like to be sentenced.  The court allowed Provenzale to withdraw from the matter and defendant to proceed 
pro se
.  The following exchange then occurred:

"THE COURT: You filed a couple of motions, but I understand that you told me last time you wanted to get sentenced and move on.

DEFENDANT FLYNN: I have no problem if it stays within confines.  I am already five months beyond statutes."

Ultimately, the matter was continued until December 7, 2001, for sentencing.

At the December 7 hearing, the State informed the court that defendant had several pending motions.  Defendant responded that he wanted "to wait" on the motions.  The court stated, "We're going to do sentencing, and then you can present [the motions]."  The court sentenced defendant to 4½ years imprisonment on each conviction, the sentences to run concurrently.  The sentencing orders reflect that defendant was also ordered to pay the Howards restitution of $2,445 on each conviction.  Before the conclusion of the hearing, the State informed the court that "there are still motions that the defendant filed."  The court responded that defendant "has indicated he's going to hold those for either-- they're on file, he can bring them, if you choose to do that."  On December 13, 2001, defendant filed a
 
pro se
 notice of appeal.  The State Appellate Defender was appointed to represent defendant on appeal.

II.  ANALYSIS

A.  Posttrial Motions

Defendant first contends that this cause must be remanded for further proceedings because the trial court failed to rule on his posttrial motion for recusal or his motion for a new trial.

At the outset, we question whether defendant's 
pro se
 posttrial motions were properly before the trial court.  The motions were filed at a time during which he was represented by counsel.  It is well established that a defendant may not simultaneously proceed 
pro se
 and by counsel.  See 
People v. Handy
, 278 Ill. App. 3d 829, 836-37 (1996) (holding defendant's 
pro se
 motion to reduce sentence was not properly before the trial court when defendant was represented by counsel since defendant may not proceed both by counsel and 
pro se
); 
People v. Taggart
, 233 Ill. App. 3d 530, 557 (1992) ("a defendant is not entitled to a 'hybrid trial' in which he alternates between proceeding 
pro se
 and being represented by counsel"); but see 
People v. McNeal
, 194 Ill. 2d 135, 147 (2000) (declining to apply rule in capital cases).

Even if defendant's motions were properly before the trial court, we note that it is the responsibility of the party filing a motion to request the trial judge to rule on it (
Majewski v. Von Bergan
, 266 Ill. App. 3d 140, 144 (1994)), and when no ruling has been made on a motion, the motion is presumed to have been abandoned absent circumstances indicating otherwise (
People v. Johnson
, 159 Ill. 2d 97, 123 (1994) (holding that defendant abandoned his motion by failing to pursue it within a reasonable time after it was filed); 
People v. Van Hee
, 305 Ill. App. 3d 333, 335 (1999); 
People v. Kelley
, 237 Ill. App. 3d 829, 831 (1992)).

Here, defendant never asked the trial judge to rule on the motions.  In fact, when the trial court raised the subject at the posttrial hearings, 
defendant responded in a manner suggesting that he intended to abandon the motions.  At the October 15, 2001, hearing, the court reminded defendant of his pending posttrial motions.  Defendant responded that he "won't really care [about the motions] after the sentencing" and that he wanted to "get sentencing closure."  The court told defendant that he could withdraw the motions, but urged defendant to first discuss the matter with counsel.  On 
November 20, 2001, the trial court granted counsel's request to withdraw so that defendant could proceed on his own.  At that time, the trial court again reminded defendant about the pending posttrial motions.  Defendant informed the court that he would like to be sentenced.  At the sentencing hearing, the State mentioned the pending motions.  Defendant responded that he wanted "to wait" on the motions.  The court opted to address the sentencing issues and then allow defendant to present the motions.  Following sentencing, the State again noted that "there are still motions that the defendant filed."  The court responded that defendant "has indicated he's going to hold those for either--they're on file, he can bring them, if you choose to do that."

Defendant never asked the trial court to rule on the motions at the sentencing hearing.  Instead, defendant abandoned his posttrial motions, when, just six days after the trial court entered its sentencing order, he filed a
 notice of appeal.  See 
People v. Gitchel
, 316 Ill. App. 3d 213, 217 (2000) (noting that a subsequently filed notice of appeal serves as an abandonment of a previously filed posttrial motion).  Defendant's failure to ask the trial court to rule on his posttrial motions cannot be excused by the fact that defendant was representing himself 
since a 
pro se
 litigant is required to comply with the rules of procedure required of attorneys.  
People v. Vilces
, 321 Ill. App. 3d 937, 939-40 (2001).  Accordingly, we conclude that defendant abandoned his posttrial motions.

Nevertheless, defendant asserts that "it appears as if the judge took advantage of the fact that [he] was appearing 
pro se
 to close the case as quickly as possible."  We disagree.  Defendant expressed his desire to conclude his case expeditiously and without a hearing on his motions.  Defendant cannot now complain that he did not receive a hearing.  Therefore, the trial court's failure to rule on defendant's motions does not require a remand.

We also point out that defendant's posttrial "Motion of Recusal" is fraught with other deficiencies.  Defendant equates the motion as a 
motion for substitution of judge filed pursuant to section 114--5 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114--5 (West 2000)).  According to defendant, the filing of his motion triggered a duty requiring the trial court to transfer the cause to a different judge for ruling.

At the outset, we note that defendant's "Motion of Recusal" 
was filed on September 26, 2001, after the jury returned its verdict.  Defendant stated that he was bringing the motion pursuant to section 114--5(c) of the Code (725 ILCS 5/114--5(c) (West 2000)).  However, section 114--5(c) is clearly not applicable here, as that provision allows 
the State
 to move for substitution of judge as of right.  Even if we consider the motion as one filed pursuant to section 114--5(a) of the Code (725 ILCS 5/114--5(a)
 
(West 2000)), which permits a 
defendant
 to move for substitution of judge as of right, the motion was untimely.  Section 114--5(a) requires the defendant to file his or her motion "[w]ithin 10 days after [the case] *** has been placed on the trial call of a judge."  725 ILCS 5/114--5(a) (West 2000); see 
People v. Antoine
, 335 Ill. App. 3d 562, 568 n.1 (2002).  As previously noted, defendant's motion was filed after the conclusion of his trial.

In this appeal, defendant attempts to invoke section 114--5(d) of the Code (725 ILCS 5/114--5(d) (West 2000)).  That provision provides in relevant part:

"[A]ny defendant may move at any time for substitution of judge for cause, supported by affidavit.  Upon the filing of
 
such motion a hearing shall be conducted as soon as possible after its filing by a judge not named in the motion ***."  725 ILCS 5/114--5(d) (West 2000).

The arguments advanced by defendant in this case are nearly
 
identical to those made by the defendant in 
Antoine
, 335 Ill. App. 3d 562.  There, the court rejected the defendant's argument that his motion for "recusal" automatically triggered a duty under section 114--5(d) to transfer the motion to another judge for hearing.  
Antoine
, 335 Ill. App. 3d at 570.  The court noted that nothing in the defendant's motion suggested that it was brought under section 114--5(d), the defendant failed to meet section 114--5(d)'s affidavit requirement, the defendant never asked the judge to transfer the motion to another judge for ruling, and the motion requested alternative relief.  Defendant's "Motion of Recusal" in this case shares many similarities with the motion filed by the defendant in 
Antoine
.  Notably, defendant did not cite section 114--5(d) in his motion, he failed to meet the statute's affidavit requirement, and he never asked the trial
 
court to transfer the motion to another judge for ruling.  Thus, we conclude that defendant's "Motion of Recusal" did not trigger a duty requiring the trial court to transfer the cause to a different judge for
 
ruling.

Defendant urges us to liberally construe section 114--5(d) and ignore the affidavit requirement.  While we agree the statute is to be liberally construed, it should not be interpreted so as to contravene its express provisions.  
People v. Van Pelt
, 18 Ill. App. 3d 1087, 1089 (1974); see also 
People v. Clay
, 124 Ill. App.
 
3d 140, 147 (1984) (holding motion for substitution of judge properly denied where movant failed to attach affidavit).  Even in the absence of an affidavit, a verified motion has been held to constitute sufficient compliance with section 114--5(d).  
People v. Morrow
, 100 Ill. App. 2d 1, 4-5 (1968); see also 
People v. West
, 80 Ill. App. 2d 59, 63 (1967) (affirming denial of motion for substitution of judge that was neither supported by affidavit nor verified).  However, defendant's motion was not verified. 

Assuming, 
arguendo
, that defendant properly invoked the provisions of section 114--5(d), we note that under the statute, a defendant's right to a hearing before a different judge is not absolute.  See 
People v. Johnson
, 159 Ill. 2d 97, 122 (1994); 
Antoine
, 335 Ill. App. 3d at 571.  Our supreme court has recognized that the trial judge against whom the motion is filed need not transfer the cause for a hearing before a different judge "[i]f the allegations [in the petition] are not sufficient" 
or if the defendant
 
"fail[s] to pursue [the motion] within a reasonable time after he file[s] it."  
Johnson
, 159 Ill. 2d at 123; see also 
People v. Melka
, 319 Ill. App. 3d 431, 442 (2000); 
People v. Bell
, 276 Ill. App. 3d 939, 947 (1995).

In this case, defendant did not file his "Motion of Recusal"
 
until September 26, 2001, 43 days after the jury returned its verdict.  The motion contained the following allegations of prejudice: (1) the trial judge presided over a previous trial involving defendant; (2) the judge was involved in setting defendant's bail, which defendant characterized as excessive; (3)  the judge ruled against defendant on pretrial evidentiary matters;
 
(4) the judge "ordered" the trial to be completed in one day; (5) the judge expressed displeasure when, during opening statements, defendant requested a recess to go to the bathroom; and (6) the judge learned that defendant assisted another inmate in preparing a motion to withdraw a guilty plea.  The record contains no information regarding defendant's assistance of another inmate or
 
his request for a recess during opening statements.  As for the remaining allegations, defendant was aware of all of these claims prior to trial.  By waiting to raise these allegations until 43 days 
after
 trial, defendant did not make his motion "at the earliest practical moment after discovering the alleged prejudice."  
Johnson
, 159 Ill. 2d at 123.  As a result, for this reason too, we find that defendant abandoned his motion.  
Johnson
, 159 Ill. 2d at 123.

B.  Motions 
In Limine

Prior to trial, defendant moved to prohibit the State from introducing evidence of defendant's three prior convictions of home repair fraud.  The court implicitly denied defendant's request, responding that if defendant opts to testify, "he brings his past with him *** like any other witness, so he's fair game."  Defendant also moved to introduce evidence that he was recently acquitted of telephone harassment charges.  Defendant contended that evidence regarding the harassment charges was relevant to explain why he had already been incarcerated for three months at the time he was indicted in the present case.  The trial court denied defendant's motion, stating that the parties were prohibited from mentioning "the previous trial, *** the charge, the disposition or where [defendant] was at the time."

During defendant's case in chief, defense counsel elicited testimony from defendant that he previously had been convicted of three counts of home repair fraud in 1995.  The State made no reference to defendant's prior convictions until closing arguments, when it commented:

"MR. WEILAND [Assistant State's Attorney]: The defendant has sat up here and told you a story.  That is at times very different than what the Howard's [
sic
] told you and he is the one who has had the three felony conviction for this same offense.  Who's got the motivation to lie here."

Defendant never objected to the State's reference to his prior convictions during closing arguments.

Defendant now complains that the trial court erred in allowing the State to present evidence of his prior convictions of home repair fraud and prohibiting him from explaining to the jury that he was unable to complete performance on the contract because he was in jail.  However, defendant has waived consideration of this issue by failing to obtain a ruling on his posttrial motions.   See 
People v. Land
, 178 Ill. App. 3d 251, 256 (1988) (holding that the failure to obtain a ruling on a motion for new trial waives the issues raised for appellate review).  Moreover, as we explain below, even if this issue had not been waived, the trial court's rulings did not constitute reversible error.

i.  Prior Convictions

Defendant claims that allowing the jury to hear evidence of his prior convictions of home repair fraud was improper for two reasons.  First, defendant asserts that the court's decision ignored the balancing test outlined in 
People v. Montgomery
, 47 Ill. 2d 510 (1971).  Second, defendant argues that the State's reference to the prior convictions during closing argument "served the cause of prejudice more than it added to the truth-seeking nature of the judicial process."

At the outset, we note that, as a general rule, a party cannot object on appeal to evidence that the party introduced.  
People v. Williams
, 161 Ill. 2d 1, 34 (1994).  In this case, during defendant's direct examination, defense counsel elicited testimony that defendant had previously been convicted of home repair fraud.  However, the aforementioned rule does not apply where a motion to exclude the evidence was presented and denied.  
Williams
, 161 Ill. 2d at 34.  As our supreme court explained in 
Williams
, disclosure of such evidence by the defendant himself serves to "reduce the prejudicial effect of the evidence on the defendant's credibility."  
Williams
, 161 Ill. 2d at 34.

In 
Montgomery
, the supreme court adopted a three-pronged approach regarding the use of prior convictions to impeach a witness's credibility.  See 
People v. Atkinson
, 186 Ill. 2d 450, 455 (1999).  Under the rule adopted in 
Montgomery
, evidence of a witness's prior conviction is admissible to attack the witness's credibility if: (1) the prior conviction involved a crime that was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment; (2) a period of not more than 10 years has passed since the date of conviction of the prior crime or of the release of the witness from confinement, whichever is later; and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice.  
Montgomery
, 47 Ill. 2d at 516-19 (adopting then-proposed Federal Rule of Evidence 609); see also 
Atkinson
, 186 Ill. 2d at 456; 
Williams
, 161 Ill. 2d at 36.

Defendant argues, and the State does not dispute, that the record contains no evidence that the trial court in this case 
employed the 
Montgomery
 rule's weighing process in this case.  However, we may affirm for any reason supported by the record regardless of the basis relied upon by the trial court.  
Scassifero v. Glaser
, 333 Ill. App. 3d 846, 860 (2002).  Here, based on the record, we find that, had the trial court conducted the 
Montgomery
 weighing analysis, it would have undoubtedly come to the same conclusion and denied defendant's motion to prohibit the State from introducing evidence of defendant's three prior convictions of home repair fraud.  On this point, 
Atkinson
, 186 Ill. 2d 450, is instructive.

In 
Atkinson
, the defendant was charged with one count of burglary.  At trial, the State impeached the defendant with evidence of two prior burglary convictions.  On appeal, our supreme  court determined that the trial court did not abuse its discretion in finding that the probative value of admitting the prior burglary convictions was not outweighed by the danger of unfair prejudice.  
Atkinson
, 186 Ill. 2d at 462.  
Notably, the court observed that the defendant's entire defense consisted of his own trial testimony.   
Atkinson
, 186 Ill. 2d at 461-62.  Thus, the court concluded, credibility was a central issue, and "the prior convictions were crucial in measuring defendant's credibility."  
Atkinson
, 186 Ill. 2d at 461-62; see also 
People v. Diehl
, 335 Ill. App. 3d 693, 704 (2002).

Applying 
Montgomery
 in conjunction with our supreme court's decision in 
Atkinson
, defendant's prior convictions were admissible under the 
Montgomery
 rule.  The first prong is satisfied because a conviction of home repair fraud involves dishonesty or false statement (see 815 ILCS 515/3(a)(2) (West 2000) ("A person commits the offense of home repair fraud when he knowingly enters into an agreement or contract, written or oral, with a person for home repair, and he knowingly: *** (2) uses or employs any deception, false pretense or false promises in order to induce, encourage or solicit such person to enter into any contract or agreement")).  In addition, defendant's convictions occurred in 1995.  Thus, a period of less than 10 years has passed since the date of conviction.

Finally, the probative value of admitting the prior home repair fraud convictions outweighed the danger of unfair prejudice.  In this case, during his case in chief, defendant called only one other witness besides himself.  However, the nature of the other witness's testimony can best be described as collateral.  Thus, as in 
Atkinson
, defendant's testimony provided his entire defense.  As such, defendant's credibility was a central issue.  Moreover, we believe that the prior convictions in this case were even more crucial in measuring defendant's credibility than the prior convictions in 
Atkinson
 since the prior convictions in this case involved dishonesty or false statement.  See 
People v. Spates
, 77 Ill. 2d 193, 204 (1979) (noting that prior convictions, depending on the nature of the offense, may have different types of probative value relative to a witness's credibility); 
Stokes v. City of Chicago
, 333 Ill. App. 3d 272, 279 (2002) ("The more the prior conviction smacks of testimonial dishonesty, the more probative weight it has")
.  Accordingly, the trial court's failure to conduct a weighing analysis was harmless, and the court did not err in denying defendant's motion to prohibit the State from introducing evidence of his three prior convictions of home repair fraud.

Defendant also claims that he was prejudiced by the prosecutor's closing argument concerning his prior convictions.  According to defendant, the State's comment was improper in that it called attention to the fact that his prior convictions were of the same crime with which he was charged here.

Defendant waived this argument.  In order to preserve an error for review, a defendant must both object to the alleged error at trial and renew the objection in his written posttrial motion.  
People v. Hunter
, 331 Ill. App. 3d 1017, 1029 (2002); 
People v. Bennett
, 304 Ill. App. 3d 69, 71 (1999).  In this case, defendant failed to preserve this error for review because he did not object to the State's comment at the time it was made and he abandoned his posttrial motions.  See 
Land
, 178 Ill. App. 3d at 256 (holding that the failure to obtain a ruling on a motion for new trial waives the issues raised for appellate review).

Defendant claims that any failure to object to the State's closing argument resulted in ineffective assistance of counsel.  However, defendant has waived this argument, too.  Supreme Court Rule 341(e)(7) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001) requires the appellant's argument to contain "the contentions of the appellant 
and the reasons therefor
, with citation of the authorities and the pages of the record relied on."  (Emphasis added.)  Supreme Court Rule 612(i) (177 Ill. 2d R. 612(i)) makes Rule 341 applicable to criminal appeals.  Here, defendant bluntly concludes that defense counsel's failure to object resulted in ineffective assistance under 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  Inexplicably absent from defendant's claim is the application of the test developed in 
Strickland
 regarding the reasons why this conduct constituted ineffective assistance.  See 
People v. Nunez
, 325 Ill. App. 3d 35, 42 (2001) (noting that to prevail on an ineffective assistance of counsel claim under 
Strickland
, a defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant such that he was deprived of a fair trial).

In any event, on the merits, we disagree with defendant's complaint.  The State asked the jury to examine the testimony of the Howards and of defendant and make a credibility determination, taking into consideration defendant's prior convictions.  Read in context, we interpret the State's remarks as a proper comment on defendant's credibility.  Given that these comments were proper, any objection by defense counsel would have been futile.  We are aware that defendant's prior convictions were of the same crime with which he was charged in this case.  This fact, however, did not mandate that the prior convictions be automatically excluded.  
People v. Flowers
, 306 Ill. App. 3d 259, 264 (1999).  Significantly, we note that the jury was instructed that defendant's prior convictions were to be considered only for credibility purposes.  See 
Atkinson
, 186 Ill. 2d 450.  In sum, the trial court did not err in allowing the jury to hear evidence of defendant's prior convictions of home repair fraud.

ii.  Acquittal

Defendant also complains that the trial court committed reversible error in prohibiting him from informing the jury that he was recently acquitted of telephone harassment charges.  Defendant contends here, as he did before the trial court, that such evidence was relevant to explain that he could not complete the Howards' project because he had been jailed since June or July 2000.

Relevant evidence is evidence that tends to make the existence of a fact of consequence to the determination of the action more or less probable than it would be without its presentation.  
People v. Rivera
, 307 Ill. App. 3d 821, 833-34 (1999).  Defendant claims that evidence of his incarceration was relevant to show why he did not complete the deck.  However, defendant promised to begin building the deck on May 8, 2000.  Defendant told the Howards the project would take five to eight days.  Defendant did not contact the Howards after April 1, despite repeated attempts by the couple to communicate with him in May and June.  Under these circumstances, we fail to see how defendant's incarceration in June or July was relevant to provide defendant with a defense for failing to build a deck in May.  The trial court's decision to exclude this evidence did not constitute an abuse of discretion.  See 
People v. Boclair
, 129 Ill. 2d 458, 476 (1989) (noting that evidentiary rulings are within the sound discretion of the trial court and 
will not be disturbed on review absent an abuse of discretion).

C. One-Act, One-Crime

Next, defendant argues that his conviction of home repair fraud must be vacated because it is based on the same physical act as his conviction of theft, thus violating the one-act, one-crime rule established in 
People v. King
, 66 Ill. 2d 551, 566 (1977).  Alternatively, defendant urges us to vacate one of the two restitution orders.

Although defendant waived this issue by failing to object at the sentencing hearing and in a postsentencing motion, we will review the issue under the plain-error doctrine because it affects substantial rights.  
People v. Pearson
, 331 Ill. App. 3d 312, 321 (2002) (addressing one-act, one-crime claim under plain-error doctrine because "defendant's substantial rights [were] affected"); 
People v. Moshier
, 312 Ill. App. 3d 879, 881 (2000) (noting that objections to surplus convictions, although technically waived, may be considered plain error).  We review 
de novo
 allegations that a defendant was subject to multiple convictions based on the same physical act
.  
People v. Boyd
, 307 Ill. App. 3d 991, 998 (1999).

In 
People v. Rodriguez
, 169 Ill. 2d 183 (1996), our supreme court explained the one-act, one-crime rule set forth in 
King
 as follows:

"Under 
King
, a court first determines whether a defendant's conduct consisted of separate acts or a single physical act.  Multiple convictions are improper if they are based on precisely the same physical act. [Citations.] If the court determines that the defendant committed multiple acts, the court then goes on to determine whether any of the offenses are lesser included offenses.  [Citations.] If so, then, under 
King
, multiple convictions are improper; if not, then multiple convictions may be entered."  
Rodriguez
, 169 Ill. 2d at 186.

The 
King
 court defined the term "act" to mean "any overt or outward manifestation that will support a separate offense."  
King
, 66 Ill. 2d at 566; see also 
People v. Crespo
, 203 Ill. 2d 335, 341 (2001).

Here, defendant was charged with home repair fraud (815 ILCS 515/3(a)(2) (West 2000)) and theft (720 ILCS 5/16--1(a)(2)(A) (West 2000)).  According to defendant, his two convictions were improper because "[e]ntering into a contract in exchange for money constituted the gravamen" of both the charges and he engaged "in a single act without a change in motivation."

We conclude that defendant's convictions of both home repair fraud and theft violate the one-act, one-crime rule.  Initially, we note that our supreme court has rejected the "independent motivation" test espoused by defendant.  
King
, 66 Ill. 2d at 566.  In applying the rule announced in 
King
, we find that the home repair fraud offense and the theft offense were based on separate acts.  Defendant committed home repair fraud by entering into a fraudulent contract with the Howards.  Defendant committed theft by accepting the Howards' check.  Each of these separate acts constituted an overt or outward manifestation that supported a different offense.  See 
Rodriguez
, 
169 Ill. 2d at 188-89; 
King
, 66 Ill. App. 3d at 566.  That the two acts were related to each other does not preclude multiple convictions.  See 
Rodriguez
, 169 Ill. 2d at 189, quoting 
People v. Myers
, 85 Ill. 2d 281, 288 (1981).  In so holding, we reject defendant's contention that the exchange of money constituted the gravamen of both counts.  While money may change hands, the section of the home repair fraud statute under which defendant was charged and convicted does not require the exchange of money.  The goal of the legislature in promulgating the Home Repair Fraud Act (815 ILCS 515/1 
et seq.
 (West 2000)) was to prohibit and prevent knowing use of fraud to induce an unwitting homeowner to actually enter into an agreement for home repair.  
People v. Thompson
, 275 Ill. App. 3d 725, 734 (1995).  Thus, for instance, a conviction of home repair fraud was upheld based on the defendant's misrepresentation that he was licensed and insured.  
People v. Hart
, 277 Ill. App. 3d 1071, 1076-78 (1996).  

Concluding that defendant's actions constituted two separate acts does not end our inquiry.  
King
 also teaches us that if the defendant committed multiple acts, the court must determine whether any of the offenses are lesser-included offenses.  
Rodriguez
, 169 Ill. 2d at 186; 
King
, 66 Ill. 2d at 566.  We use the charging-instrument approach in identifying lesser-included offenses.  
People v, McLaurin
, 184 Ill. 2d 58, 104 (1998).  Under this approach, an offense is deemed to be a lesser-included offense if it is described by the charging instrument.  
McLaurin
, 184 Ill. 2d at 104.  At a minimum, the instrument charging the greater offense must set forth the main outline of the lesser offense.  
McLaurin
, 184 Ill. 2d at 104-05.  

Here, defendant was charged with a Class 3 felony (theft) (see 720 ILCS 5/16--1(b)(4) (West 2000)) and a Class 4 felony (home repair fraud) (see 815 ILCS 515/4(a) (West 2000)).  Defendant's indictment for home repair fraud alleges that he "knowingly entered into a contract for home repair with Timothy Howard and used deception to induce such person to enter into that contract."  Defendant's indictment for theft, the greater offense, alleges that he "knowingly obtained, 
by deception
, control over the property of Timothy Howard, *** intending to deprive Timothy Howard of the use and benefit of the property, 
in that defendant entered into a contract for home repair with Timothy Howard
 in which Timothy Howard issued a check to defendant to perform work at Timothy Howard's home, 
and at the time defendant entered into said contract, he knew such work would not be performed
, and said defendant thereafter cashed the check."  (Emphasis added.)  Thus, the indictment charging the greater offense sets out the main outline of the lesser offense in that it requires proof that defendant entered into a contract with the victim, knowing that the work would not be performed.  As such, the lesser offense cannot stand.  
King
, 66 Ill. 2d at 566.  Accordingly, we vacate defendant's conviction and sentence for home repair fraud.  As a result, we need not address defendant's alternate argument.

D.  Sufficiency of the Evidence

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

[The following material is nonpublishable under Supreme Court Rule 23.]

[The preceding material is nonpublishable under Supreme Court Rule 23.]

III. CONCLUSION

For the reasons stated above, we affirm defendant's conviction and sentence for theft and vacate his conviction and sentence for home repair fraud.

Affirmed in part and vacated in part.

BYRNE and GILLERAN JOHNSON, JJ., concur.

FOOTNOTES
1:
J.U.L.I.E.,
 
which stands
 
for Joint Utilities
 
Locator Information
 
for
 
Excavators
,
 is an organization that locates underground cables and pipes.  See 
Kraft Chemical Co. v. Illinois Bell Telephone Co.
, 240 Ill. App. 3d 192, 194 (1992).