STEPHEN A. SPARROW *et al.*, Plaintiffs-Appellants, v. TALMAN HOME FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee.

First District (5th Division)   No. 1—90—1755

Opinion filed March 27, 1992.

Egan & Trapp, of Chicago, for appellants.

Baker & McKenzie, of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Stephen A. Sparrow, suffered personal injuries after falling through drywall in the attic of defendant's converted garage. On the opening day of trial, plaintiff filed an emergency motion for leave to file a fifth-amended complaint adding a count under the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*). The trial court denied the motion. After plaintiff presented his case based on a negligence theory, the trial court entered a directed verdict in favor of defendant. The court found that the danger presented by the drywall was open and obvious and, therefore, defendant did not owe plaintiff a legal duty. Plaintiff appealed. We consider: (1) whether the trial court, on the opening day of trial, abused its discretion denying plaintiff's emergency motion for leave to file a fifth-amended complaint adding a count under the Structural Work Act; and (2) whether the trial court properly entered a directed verdict in favor of defendant.

We affirm.

Relevant to our disposition are the following facts as disclosed by the record. On August 18, 1982, Stephen A. Sparrow (Sparrow) suffered personal injuries after falling through the ceiling of a converted garage located at 1521 Fairfield, Hoffman Estates, Illinois. Sparrow

filed suit against Talman Home Federal Savings & Loan (defendant), owner of the premises. (Although Sparrow's wife, Marlene, was named in the notice of appeal, her participation in the proceedings is not relevant to our disposition.)

In 1977, Walter Ragnow, as owner of 1521 Fairfield, converted the garage into a bedroom. Prior to the conversion, the attic above the garage had been accessed by a scuttle hole (a framed opening with a trap door). As part of the conversion, Ragnow filled the scuttle hole with a piece of drywall which was plastered over and made part of the bedroom ceiling. Ragnow did not place a piece of plywood over the drywall. The drywall sat $3\frac{1}{2}$ inches below the two-by-four support beams in the attic above. Ragnow then installed a disappearing stairwell to provide new access to the attic. The mouth of the stairwell was adjacent to the covered scuttle hole.

Ragnow subsequently defaulted on his mortgage, and Northwest Federal Savings & Loan (Northwest Federal) acquired title to 1521 Fairfield through foreclosure proceedings. Then, on February 19, 1982, defendant acquired title to 1521 Fairfield through a merger with Northwest Federal.

Prior to the day of his injury, Sparrow was employed by Northwest Federal as a real estate manager. On the day of his injury, Sparrow was employed by Talman Home Mortgage Corporation as a real estate manager. Sparrow's responsibilities with both employers required that he inspect foreclosed property to determine whether the property needed to be cleaned or repaired. Eventually, the property would be made available to the public for sale.

Defendant, on its part, executed a service agreement with Talman Home Mortgage Corporation which required that Talman Home Mortgage Corporation maintain various properties owned by defendant. If repairs or cleaning were required, an independent contractor was hired to perform the work.

On August 18, 1982, the day of his injury, Sparrow went to inspect 1521 Fairfield pursuant to the service agreement with defendant. It was Sparrow's first visit to 1521 Fairfield. Sparrow was accompanied by John Martz, an independent contractor. Martz often placed bids for the repair work on the foreclosed properties; however, he did not intend to bid for the work at 1521 Fairfield. Both Sparrow and Martz entered the premises, but Martz soon returned to his truck.

Sparrow had in his possession an inspection report for 1521 Fairfield which had been given to him by Dick Bauer, another manager with Talman Home Mortgage Corporation. The inspection report

stated: "attic has quite a bit of debris. Clean out is in order. Folding stairs to attic." Sparrow located and pulled down the string to the disappearing stairwell. He ascended to the top of the stairs and placed his foot on a two-by-four support beam in the attic. He stood on the support beam, looked around, and saw a volume of debris to his left. He then took two or three steps forward to get a better view of the debris. His foot came into contact with the drywall and his body fell through the drywall to the floor below. As a result of the fall, he broke his leg. Sparrow admitted that the lighting in the attic was sufficient and that he was looking at the drywall when he stepped forward. He did not, however, intentionally step on the drywall. Furthermore, Sparrow knew the difference between plywood and drywall and that drywall could not support his weight.

Sparrow filed his initial complaint in 1983. In 1990, on the opening day of trial, Sparrow filed an emergency motion for leave to file a fifth-amended complaint adding a count under the Structural Work Act. The court denied the motion on two grounds: (1) the attic floor was not used as a "scaffold" or "support" or "device" as those terms are defined in the Act; and (2) the emergency motion unfairly surprised defendant.

After Sparrow presented his case in chief based on a negligence theory, defendant moved for a directed verdict. During the hearing on the motion, defendant argued, in part, that (1) defendant did not know of the existence of the drywall (covered scuttle hole) and, therefore, defendant could not be held liable; and (2) that the danger presented by the drywall was open and obvious to Sparrow and, therefore, defendant did not owe Sparrow a legal duty. The trial court found that the danger was open and obvious and granted the motion on the ground that defendant did not owe Sparrow a legal duty. The court relied on *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465.

OPINION

We first address whether the trial court properly denied Sparrow's emergency motion for leave to file a fifth-amended complaint adding a count under the Structural Work Act. Because we agree that the emergency motion unfairly surprised defendant, we do not consider whether the attic floor was a "scaffold" or "support" or "device" as those terms are defined under the Act.

■ Although the Code of Civil Procedure provides that pleadings may be amended at any time prior to trial, it is well settled that parties have no absolute right to amend a complaint; rather, granting or

denying a motion for leave to amend a complaint is a matter within the discretion of the trial court, and its decision will not be disturbed on appeal except where there is a clear or manifest abuse of that discretion. *Intini v. Schwartz* (1979), 78 Ill. App. 3d 575, 397 N.E.2d 84.

Here, the court considered that Sparrow filed his initial complaint in 1983. Sparrow subsequently filed four amended complaints (dated December 13, 1983; March 13, 1984; August 15, 1984; and October 2, 1986), each alleging damages under a negligence theory. Then, seven years after filing the initial complaint and on the opening day of trial (January 3, 1990), Sparrow filed an emergency motion for leave to file a fifth-amended complaint adding a count under the Structural Work Act. The trial court noted that Sparrow's counsel was fully aware of the facts in the case for over seven years. The trial court also noted that a claim under the Structural Work Act, unlike a claim under a negligence theory, did not permit consideration of Sparrow's negligence. In light of these considerations, the court ruled that the emergency motion constituted unfair surprise to defendant.

■ We note that other courts have held that similar motions to amend complaints constituted unfair surprise to the opposing party. In particular, *Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 335 N.E.2d 10, held that a complaint amended on the opening day of trial adding a count under the Structural Work Act constituted unfair surprise to the defendant. Accordingly, we hold that the trial court here did not abuse its discretion denying Sparrow's emergency motion for leave to file his fifth-amended complaint.

We next consider whether the trial court properly directed a verdict in favor of defendant. The trial court relied on *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, and held that, where the danger was open and obvious, defendant did not owe Sparrow a legal duty. However, we believe that the Illinois Supreme Court opinion in *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223, requires that we reverse the trial court on the specific issue of whether a legal duty existed.

■ ■ It is well settled that whether a legal duty exists in a particular case is a question of law to be determined by the court. (*Ward,* 136 Ill. 2d 132, 554 N.E.2d 223.) It is also true that *Genaust* established a common law principle that an owner or occupier did not have a legal duty to warn entrants on his premises of a danger which was open and obvious. (*Genaust,* 62 Ill. 2d 456, 343 N.E.2d 465.) However, *Ward,* which was issued before the trial court below disposed of Sparrow's post-trial motion, established:

"[T]o the extent that the rule may have held that the duty of reasonable care owed by an owner or occupier to those lawfully on his premises does not *under any circumstances* extend to conditions which are known or obvious to such entrants, that rule is not the law in this State." (Emphasis in original.) (*Ward*, 136 Ill. 2d at 145, 554 N.E.2d at 229.)

Instead, *Ward* provides that an owner's duty toward entrants on his property is always that of reasonable care, and the issue in cases involving conditions that are open and obvious is whether the condition is within the scope of the duty of reasonable care. (*Ward*, 136 Ill. 2d 132, 554 N.E.2d 223.) Accordingly, a court must determine whether a defendant in the exercise of reasonable care could anticipate that the plaintiff would fail to notice the condition, appreciate the risk, and avoid it. (*Ward*, 136 Ill. 2d 132, 554 N.E.2d 223, citing Keeton, *Personal Injuries Resulting from Open and Obvious Conditions*, 100 U. Pa. L. Rev. 629 (1952).) Furthermore, regardless of the presence of an open and obvious danger, a court must assess the scope of the defendant's duty in accordance with the following traditional factors: the reasonable foreseeability of injury; the likelihood of and the possible serious nature of an injury; the magnitude of the burden guarding against an injury; and the consequences of placing that burden on the defendant. (*Ward*, 136 Ill. 2d 132, 554 N.E.2d 223, citing *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387.) Finally, the scope of the duty of reasonable care is not defined by reference to the plaintiff's negligence; the focus must be on the defendant. *Ward*, 136 Ill. 2d 132, 554 N.E.2d 223.

■ Here, the trial court found that the danger presented by the drywall was open and obvious to Sparrow. We will not disturb that finding. Therefore, we must determine whether defendant's general duty of reasonable care under the circumstances extended to the risks associated with the drywall. We must determine whether, in the exercise of reasonable care, defendant should have anticipated that Sparrow would fail to notice the drywall, appreciate the risk, and avoid it. Several facts weigh against such a determination: Sparrow admitted that he was looking at the drywall when he stepped forward; Sparrow admitted that he understood the drywall could not support his weight; Sparrow had inspected other attics in the past; and it was precisely Sparrow's professional responsibility to determine whether a condition, like the condition presented by the drywall, needed repair.

However, we believe that an application of *Ward* and its progeny nonetheless requires us to hold that a legal duty existed under the circumstances in this case. For example, in *American National Bank &*

*Trust Co. v. National Advertising Co.* (1990), 205 Ill. App. 3d 348, 562 N.E.2d 1057, a painter was killed when his head struck a power line which was suspended above a billboard he was working on. The decedent was traversing from a walk rail on the billboard to a ladder when he struck the power line with his head. The court noted that the decedent had become distracted by the necessity of care for his footing on the boards of the walk rail. Finally, the decedent was a professional who was responsible for understanding the dangers which were part of his work. The court, nonetheless, determined that the defendant owed the decedent a legal duty. Here, the drywall was located directly in front of the mouth of the stairwell and Sparrow was in the act of traversing the drywall when he fell through. We note further that it was necessary for Sparrow to take care of his footing on the two-by-four support beams in the attic. Whether or not this actually distracted Sparrow, we believe that defendant could have anticipated that Sparrow might fail to avoid the drywall. Finally, Sparrow's professional responsibilities, like the decedent's responsibilities in *American National*, do not prevent us from determining that defendant owed Sparrow a legal duty.

We also must assess the scope of defendant's duty in accordance with the traditional factors. *Ward* provides us guidance in this regard. There, the plaintiff, while carrying a large, bulky mirror, suffered injuries after colliding with a cement post located outside the exit of defendant's store. The court considered that the plaintiff's collision with the post was reasonably foreseeable; the plaintiff's injury was the likely result of a collision with the post; and the burden of protecting against the danger would have been slight (a simple warning or relocation of the post would have sufficed). Similarly, here, Sparrow's failure to avoid the drywall was reasonably foreseeable; Sparrow's broken leg was the likely result of a fall through the drywall; and the burden of protecting against the danger would have been slight (the placement of a piece of plywood over the drywall would have sufficed).

In sum, we hold that the trial court erred in applying *Genaust* to determine whether a legal duty existed. Instead, according to *Ward* and its progeny we hold that, under the circumstances presented, defendant did owe Sparrow a legal duty.

■ Notwithstanding the existence of a legal duty, however, we hold that the trial court properly entered the directed verdict in favor of defendant. We base this decision on section 343(a) of the Restatement (Second) of Torts, which is addressed "to the more general ques-

tion of liability, and not specifically to the existence of a duty." (*Ward,* 136 Ill. 2d at 151, 554 N.E.2d at 232.) Section 343(a) provides:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees." (Restatement (Second) of Torts §343(a) (1965).)

We note that defendant made the corresponding argument during the hearing on the motion for directed verdict. Defendant also elicited testimony at trial which supports its argument. For example, the following exchange occurred between defense counsel and plaintiff's expert, who at plaintiff's request made a thorough study of the evidence in this case:

> "Q. If I understand you correctly, there are two things you claim that [defendant] should have done. That is to go out there or to recognize that there was this hole and put something over it?
>
> A. True.
>
> Q. Is it your understanding, sir, that the only people who were at this property prior to the date of Mr. Sparrow's accident were Mr. Sparrow and Mr. Bauer?
>
> A. That I know of, true.
>
> Q. They both worked for the mortgage company?
>
> A. And that is true.
>
> Q. To the best of your knowledge, no one from [defendant] was ever out to this property before the day of the accident?
>
> A. I have no indication of that.
>
> * * *
>
> Q. Insofar as the condition of the premises, is it fair to say that any information that [defendant] had about the property would come through either Mr. Sparrow or Mr. Bauer?
>
> A. Precisely."

We believe that the record in its entirety establishes that defendant did not know about the drywall. Defendant, only recently prior to Sparrow's injury, acquired title to the property through a merger with Northwest Federal. No one from defendant's office had actually been to the property; both Sparrow and Dick Bauer were employed by a separate entity, Talman Home Mortgage Corporation. Further, we believe there is no basis to establish that defendant did not use reasonable care to discover the condition. In fact, defendant was exercising

reasonable care by having Sparrow inspect the property for necessary repairs. Therefore, according to section 343(a) we affirm the trial court's directed verdict in favor of defendant.

We are aware that the trial court did not rely on section 343(a) in entering the directed verdict. However, a reviewing court is not bound by the precise reasons given by a lower court in entering a verdict and may sustain the verdict if it is justified by any reason appearing in the record, regardless of whether the lower court relied on those reasons and regardless of whether the lower court's reasoning was correct. *Coleman v. Windy City Balloon Port, Ltd.* (1987), 160 Ill. App. 3d 408, 513 N.E.2d 506.

Affirmed.

MURRAY and GORDON, JJ., concur.