THE VILLAGE OF RIVERDALE, Plaintiff-Appellant, v. AHKIEYA IRWIN, Defendant-Appellee.

First District (2nd Division)    No. 1—93—1628

Opinion filed March 16, 1994.

DiVITO, P.J., dissenting.

Buikema, Hiskes, Dillner, O'Donnell & Marovich, Ltd., of South Holland (Michael Marovich, of counsel), for appellant.

Kenneth Flaxman, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

The Village of Riverdale (Riverdale) appeals from the bench trial acquittal of 15-year-old Ahkieya Irwin, who had been charged with violating the Riverdale disorderly conduct ordinance. Riverdale questions the circuit court's finding that it failed to prove all required elements of a violation of its disorderly conduct ordinance. Irwin asserts that if this court disagrees with the circuit court's assessment of the evidence, we should find the disorderly conduct ordinance facially unconstitutional.

The rule against double jeopardy does not bar an appeal by a municipality from a judgment acquitting a defendant in an ordinance violation prosecution such as this. *Village of Park Forest v. Bragg* (1967), 38 Ill. 2d 225, 230 N.E.2d 868.

At trial, Riverdale police officer Sam Rodgers testified that he responded in a marked squad car to a report of a fight in progress at about 137th and Lowe in the Village of Riverdale. In the vicinity of the fight, he observed at least 125 people in the street, so many that he was unable to see the opposite end. After additional officers arrived, Rodgers used his public address speaker to request everyone to clear the street. Rodgers was in uniform.

Other Riverdale police officers also used their police public address systems asking citizens to get off the street and back into their homes. Officer Rodgers then got out of his car, sought the source of the problem, and determined that Irwin and another young woman, whom he characterized as "a victim" and "the offender," were involved in a fight. As he did so, several other persons approached and began yelling at him to make some arrests. Rodgers testified that with all the people in the street chaos was developing. At this time he could not yet determine who started the fight, who was right and who was wrong. He testified, "we just wanted to get the street cleared and that we would contact them and try to find out what was going on." One person in the fight supposedly was sprayed with mace and several others were armed with sticks. Rodgers again requested that all persons present, including Irwin, clear the street. The police were losing control of the situation; in Rodgers' mind, violence was imminent.

Rodgers specifically asked Irwin to leave the scene and go home. She did not do so, remaining in the street, badgering and yelling at Rodgers. She continued arguing with him and the other young woman involved in the fight. Rodgers testified that he asked Irwin to leave the scene at least a dozen times and that he explained to her why he wanted her to go home. He told Irwin that police wanted the streets cleared "because we did not know exactly what was going on; and by sending her home, that we would be able to talk to her and find out exactly both sides of [contention]." She still refused to comply with his request. Rodgers later determined, and wrote in his report, that Irwin was the victim of a battery. Up to that point he had not asked her where she lived, and he did not know her before the incident. When she refused to go home, Rodgers arrested her and charged her with disorderly conduct.

The Village of Riverdale disorderly conduct ordinance, No. 9.04.010, reads in pertinent part as follows:

"A person commits disorderly conduct when he [or she] knowingly:

* * *

C. Refuses or fails to cease and desist any peaceful conduct or activity likely to produce a breach of peace where there is an imminent threat of violence, and where the police have made all reasonable efforts to protect the otherwise peaceful conduct and activity, and have requested that the conduct and activity be stopped, and explained the request if there is time ***." Village of Riverdale, Ill., Ordinance No. 9.04.010 (19____).

In granting Irwin's motion for a judgment of acquittal at the

close of Riverdale's case, the circuit court explained its reasoning as follows:

"The ordinance, which the young lady is charged with, breaks down into four or five different components. Let's read it together: 'Refuses or fails to cease and desist any peaceful conduct or activity likely to produce a breach of the peace where there is imminent threat of violence.'"

The court then concluded, "[t]here was a failure of the evidence to show imminent threat of violence." It is impossible to fathom on what basis the circuit court could have adjudged from the record evidence that there was no imminent threat of violence shown from the testimony of Officer Rodgers, recounted above. There was no countervailing evidence. The court's conclusion is clearly contrary to the manifest weight of the evidence.

The court also manifestly misconstrued the evidence of Officer Rodgers' efforts to control a chaotic situation. The court, reading from the ordinance, stated:

"The next component: 'And having requested the conduct and activity to be stopped.'

The officer asked this lady not to fight and 'explain the request if there is time.'"

The court thereafter observed, "[t]here was no evidence meeting the burden of explaining to this person." To the contrary, the evidence clearly reveals that Officer Rodgers requested 12 different times that Irwin clear the street and go home. And, as noted above, he told Irwin that police wanted the streets cleared "because we did not know exactly what was going on; and by sending her home, that we would be able to talk to her and find out exactly both sides of [the controversy]."

■ The requisite evidentiary standard necessary to convict for violating a municipal ordinance is proof by a preponderance of the evidence. (*City of Chicago v. Joyce* (1967), 38 Ill. 2d 368, 232 N.E.2d 289; *City of Marquette Heights v. Clarkson* (1978), 64 Ill. App. 3d 162, 380 N.E.2d 1213.) That burden has been met here.

A defendant's motion for a judgment of acquittal at the close of the prosecution's case requires the circuit court to consider whether reasonable minds could fairly conclude the guilt of the accused pursuant to the applicable burden of proof, considering the evidence in the light most favorable to the prosecution. (*People v. Riggins* (1990), 205 Ill. App. 3d 904, 564 N.E.2d 122, *appeal denied* (1991), 136 Ill. 2d 552, 567 N.E.2d 339.) The circuit court's decision on this case is unsupportable and must be reversed and the cause remanded for further proceedings.

■ We turn now to the constitutional issue. The government's right to restrict the time, place, or manner of free speech in the public way is very limited. The government may enforce reasonable restrictions and regulations as long as they "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." (*United States v. Grace* (1983), 461 U.S. 171, 177, 75 L. Ed. 2d 736, 743-44, 103 S. Ct. 1702, 1707.) Here, the ordinance places no restrictions upon the content of speech. Instead, the ordinance serves the significant governmental interest of public safety. Freedom of speech and assembly are affected only under the narrow circumstances of where the subject "refuses or fails to cease and desist" his or her activity "likely to produce a breach of peace where there is an imminent threat of violence." Further, a violation occurs only where, as here, the police have made "reasonable efforts to protect the otherwise peaceful conduct" and have asked that the conduct be stopped, giving reasons for so asking.[1] Finally, the ordinance leaves open sufficient channels of communication. Irwin could have reported the same incident to police at the police station even if police might not have taken her address before requesting that she leave the street. The ordinance is facially constitutional.

For the reasons aforesaid, the cause must be reversed and remanded for proceedings not inconsistent with this opinion.

McCORMICK, J., concurs.

PRESIDING JUSTICE DiVITO, dissenting:

I respectfully dissent because I believe that the circuit court properly acquitted defendant at the close of Riverdale's case, albeit for the wrong reasons.

The ordinance at issue contains the following elements requiring proof by a preponderance of the evidence:

    1. A person must refuse or fail to cease and desist any peaceful conduct or activity;

    2. The refusal or failure must be done knowingly;

    3. The continuation of the peaceful conduct or activity must be likely to produce a breach of the peace;

    4. A threat of violence must be imminent;

    5. The police must have made all reasonable efforts to protect the peaceful conduct or activity;

---

[1]From the evidence it is not so clear that Irwin was entirely engaged in "peaceful conduct"; however, since the constitutional issue was raised on appeal, any doubt will be resolved in her favor.

6. The police must have requested that the peaceful conduct or activity be stopped; and

7. The police must have explained the request that the peaceful conduct or activity be stopped if there is time.

Riverdale argues that it presented evidence, in the form of the testimony of Rodgers as outlined in the majority opinion, to prove all of these elements. Irwin responds that Riverdale failed to present evidence that defendant's speech to Rodgers, the peaceful conduct or activity at issue, was likely to produce a breach of the peace. She further alleges that Riverdale failed to prove that there was an imminent threat of violence; that Rodgers made no effort to protect the peaceful conduct or activity; and that Rodgers did not explain his request that the peaceful conduct or activity be stopped. Since she does not challenge the other elements (that Irwin refused or failed to cease and desist her peaceful conduct or activity; that the refusal or failure was done knowingly; and that Rodgers requested that the peaceful conduct or activity be stopped), these elements are considered proved.

The circuit court found that the evidence failed to show an imminent threat of violence or that Rodgers explained his request. I agree with the majority's finding that the circuit court erred in making these determinations.

However, Rodgers presented no evidence that the police made all reasonable efforts to protect Irwin's speech to him, another element of the offense. Riverdale asserts in its brief that the officers did this by asking everyone to clear the streets and go home. The record does not indicate, however, that Rodgers and the other officers did *anything*, let alone made all reasonable efforts, to protect Irwin's speech; they merely requested that *everyone*, including Irwin, go home. This evidence does not meet the burden of proof as to this element of the ordinance.

This highly significant failure should not be disregarded, because Riverdale's own evidence indicated that Irwin had been a victim of a battery and that the police did nothing to learn Irwin's identity or address, making later contact with her unlikely. There is also no evidence that Irwin's arrest caused the situation to become more volatile, indicating that placing her in a police car for the purpose of talking to her was, to use the words of the ordinance, one of the "reasonable efforts" the police could have used to protect her otherwise peaceful activity.

Consequently, the circuit court's finding that Riverdale failed to prove all the elements of its case was correct, although not for the reasons the circuit court articulated. This court may, however, affirm

the circuit court on any basis appearing in the record. (*Sparrow v. Talman Home Federal Savings & Loan Association* (1992), 227 Ill. App. 3d 848, 592 N.E.2d 363.) Reasonable minds in this case cannot fairly conclude the guilt of the accused, even when considering the evidence in the light most favorable to the prosecution.

The majority states, in its consideration of the constitutionality of the ordinance, that "a violation occurs only where, as here, the police have made 'reasonable efforts to protect the otherwise peaceful conduct' and have asked that the conduct be stopped, giving reasons for so asking." (259 Ill. App. 3d at 1013.) This is certainly a fair reading of the ordinance, and I agree with the majority's finding that it is facially constitutional. The majority does not, however, consider Riverdale's failure to prove this element of the offense by a preponderance of the evidence in its analysis, and I therefore disagree with its conclusion. I would affirm the judgment of the circuit court for this reason.