(No. 90278.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DERRICK HARVEY, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. NOAH BAREFIELD, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MAURICE G. LYONS, Appellant.

*Opinion filed June 24, 2004.*

McMORROW, C.J., joined by RARICK, J., specially concurring.

Daniel D. Yuhas, Deputy Defender, and Keleigh L. Biggins, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant, and Derrick Harvey, of Menard, appellant *pro se*.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb, Kenneth McCurry and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Catherine K. Hart and Judith L. Libby, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and William L. Browers

and Anne S. Bagby, Assistant Attorneys General, of Chicago, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Arden J. Lang, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and William L. Browers and Kristen L. Hopkins, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE KILBRIDE delivered the opinion of the court:

The primary issue in these three consolidated cases concerns the trial courts' use of the mere-fact method of impeachment. The defendants, Derrick Harvey, Noah Barefield, and Maurice G. Lyons, were separately convicted of various crimes. All three defendants appealed, challenging the trial court's use of mere-fact impeachment as violating this court's holdings in *People v. Atkinson*, 186 Ill. 2d 450 (1999), and *People v. Cox*, 195 Ill. 2d 378 (2001).

The First District of the appellate court affirmed Harvey's conviction, finding he had waived the issue. *Harvey*, No. 1—99—0637 (unpublished order under Supreme Court Rule 23). The Fourth District of the appellate court affirmed Barefield's conviction, finding he requested the trial court use mere-fact impeachment. *Barefield*, No. 4—98—0838 (unpublished order under Supreme Court Rule 23). Likewise, the Fourth District affirmed Lyons'

conviction, finding he agreed to the trial court's use of mere-fact impeachment. *Lyons*, 315 Ill. App. 3d 959.

We allowed the defendants leave to appeal (177 Ill. 2d R. 315) primarily to determine whether the trial court's use of mere-fact impeachment amounted to plain error in any of the cases. We affirm the appellate court decision in *Harvey*, No. 1—99—0637 (unpublished order under Supreme Court Rule 23). We affirm in part, reverse in part, and remand the appellate court's judgment in *Barefield*, No. 4—98—0838 (unpublished order under Supreme Court Rule 23), with directions to vacate Barefield's four convictions for unlawful possession of a motor vehicle. Lastly, we affirm the appellate court decision in *Lyons*, 315 Ill. App. 3d 959.

## I. BACKGROUND

### A. People v. Harvey

Harvey was charged, in part, with two counts of first degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1, now 720 ILCS 5/9—1 (West 2000)) and two counts of aggravated kidnapping (Ill. Rev. Stat. 1991, ch. 38, par. 10—2, now 720 ILCS 5/10—2 (West 2000)) as a result of the disappearance and deaths of Stanton Burch and Michael Purham. The evidence at trial established Harvey was a member of the Unknown Vice Lords street gang. At the time of the events at issue, the gang had recently split into two opposing groups and were battling for control of drug trafficking.

On September 12, 1993, Willie Lloyd, one of the group leaders, allegedly stole money and drugs from a street dealer working for Tyrone Williams, the leader of the other faction. The next day, Eunice Clark, a member of Williams' faction, was selling drugs on a street corner when she was approached by Burch and Purham, members of Lloyd's faction. According to Clark, Burch and Purham told her the corner was now controlled by Lloyd.

Soon thereafter, Artiss Thigpen, a member of Williams' faction, and two other individuals arrived at the corner by car, armed with guns. Harvey and 10 to 15 armed individuals then arrived at the corner on foot. Clark stated the armed individuals placed Burch and Purham in the vehicle and drove away.

Police Officer Robert Schaefer testified that on the following evening, September 14, 1993, he and another officer arrested Harvey after observing him in the front passenger seat of a car with a shotgun between his legs. At the police station Harvey informed Detective Kristin Kato that he could show the officers where the bodies of Burch and Purham were located. Harvey led four officers to the victims' bodies and upon returning to the police station Harvey gave a signed, handwritten statement detailing his involvement in the murders.

Harvey's statement corroborated the information given by Clark. He further described his membership in the Unknown Vice Lords, his role as a drug dealer, the controversy within the gang about who was allowed to sell drugs at the corner, and Lloyd's attack on one of Williams' street dealers. Harvey also described the events surrounding the murders of Burch and Purham. Harvey stated he believed he shot one of the victims in the leg.

At trial, however, Harvey repudiated his statement, claiming the statement was coerced and false. Harvey claimed he was struck by Detective Kato prior to giving his statement and that Detective Kato promised him he would be released if he gave a statement. Harvey testified he was not involved in the shootings.

Following the close of evidence, the State tendered a jury instruction pertaining to evidence of defendant's prior conviction. See Illinois Pattern Jury Instructions, Criminal, No. 3.13 (3d ed. 1992). Defense counsel objected and the following colloquy took place:

"MR. STANTON [Assistant Public Defender]: We object to that based on the fact the State *** rested its case in

rebuttal after we rested our case-in-chief and at that point in time the State did not put in any conviction of the defendant so for that purpose we are objecting.

THE COURT: Objection is overruled. [The jury instruction] will be given since I am allowing the State to reopen their case for the purpose of entering two exhibits which [will] be read to the jury. People's 12 given over objection.

MR. STANTON: So the record is clear we're objecting to Your Honor allowing the State to do that.

THE COURT: Okay. As to each of the certified copies of conviction looking at what the underlying offenses [were] *** that defendant was convicted for on an earlier occasion, weighing the probative effect that would be to the jury and taking into account any possible prejudice that might inure given the testimony of the defendant that he was in fact and did engage in the selling of drugs I'll allow for the purposes of rebuttal the introduction of those exhibits which *** tell the jury about two prior convictions of the defendant which were for drug related offenses.

However, I'm going to limit the State, as I've already told them, to telling the jury that the defendant was convicted of a felony offense and the date that the conviction was given. That would be the nature that they'll be allowed to present those exhibits to the jury."

In the presence of the jury, the State then made the following comment:

"In rebuttal, Your Honor, the State would stipulate as follows: That on the date of June 1st of 1992, the defendant was convicted of a felony offense. And on the date of June 4th of 1992, the defendant was convicted of another felony offense."

The jury acquitted Harvey of both first degree murder counts and convicted him of both aggravated kidnapping counts. Harvey filed a posttrial motion arguing, in part, that the trial court erred in allowing the State to introduce evidence of Harvey's prior felony convictions after the State's case. Harvey's posttrial motion was denied and he was sentenced to two concurrent 30-year terms of imprisonment.

The appellate court affirmed, finding the State agreed

to defense counsel's offer to stipulate defendant was convicted of two felonies without disclosing the nature of the crimes. The appellate court reasoned it was only in hindsight that defendant asserted his counsel's strategy was defective and the State should have been allowed to reveal the true nature of his crimes.

Harvey now appeals, arguing he did not stipulate or agree to the use of mere-fact impeachment. According to Harvey, the trial court's *sua sponte* decision to use mere-fact impeachment was reversible error.

### B. People v. Barefield

Barefield was charged with four counts of unlawful possession of four stolen motor vehicles (625 ILCS 5/4—103(a)(1) (West 1996)) and one count of aggravated possession of stolen motor vehicles (625 ILCS 5/4—103.2(a)(1) (West 1996)), relating to the same four motor vehicles.

Prior to trial, Barefield's counsel presented an oral motion *in limine* to preclude the State from introducing evidence of his prior felony conviction for burglary to a motor vehicle. In the alternative, Barefield requested that the mere-fact method of impeachment be used to inform the jury only that Barefield had a prior conviction and the year of that conviction. The State agreed to the mere-fact method of impeachment.

The trial court granted Barefield's request to use mere-fact impeachment. Barefield testified during direct examination that he had a prior felony conviction from "a couple of years ago." He further testified he had no knowledge any of the automobiles were stolen, and he denied possessing any of the stolen automobiles.

The jury found Barefield guilty of all five offenses. The trial court sentenced Barefield to 15 years in prison for the aggravated possession count and four 7-year prison terms for each of the simple possession counts, all to run concurrently. Barefield filed a posttrial motion but

did not contest the trial court ruling on his motion *in limine*.

On appeal, Barefield argued the trial court erred by using the mere-fact impeachment method. He further argued his four convictions for simple possession should be vacated as carved from the same physical acts that formed the basis of the aggravated possession conviction.

The appellate court found Barefield had waived both issues. As to the mere-fact impeachment issue, the appellate court held Barefield induced the error and, in light of the overwhelming evidence of guilt, the error was harmless. The appellate court further held Barefield's convictions did not violate the one-act, one-crime rule of *People v. King*, 66 Ill. 2d 551 (1977). The appellate court reasoned that, unlike the simple possession counts, the aggravated possession count required proof of possession within a certain time period. The appellate court further reasoned the two statutes at issue specifically provide that each individual offense shall not include the offense set forth in the other provision.

The dissent disagreed that Barefield had induced the error concerning mere-fact impeachment, but concurred that defendant had not been prejudiced by the error because the trial court had balanced the prejudicial effect of the convictions against their probative value. The dissent also determined that the four simple possession convictions were subsumed by the aggravated possession conviction and should be vacated.

Barefield appeals, essentially renewing the arguments he made before the appellate court.

### C. People v. Lyons

Lyons was charged with vehicular invasion (720 ILCS 5/12—11.1 (West 1996)), aggravated battery (720 ILCS 5/12—4(b)(8) (West 1996)), intimidation (720 ILCS 5/12—6(a)(1) (West 1996)), and unlawful restraint (720 ILCS 5/10—3 (West 1996)).

The alleged victim, Melissa McMullen, testified as follows. On August 9, 1998, at approximately 2:30 a.m., she left work and drove to a nearby grocery store. She parked in the fire lane and entered the store. Upon leaving the store, she opened her driver's side car door. Lyons approached her and pushed her into the vehicle. According to McMullen, she had never seen Lyons before.

McMullen testified that Lyons held her down inside the vehicle and threatened to kill her if she did not remain silent. He then repeatedly asked for her car keys. McMullen flashed the headlights and honked the horn in an effort to attract the attention of a taxi driver in the parking lot. Lyons attempted to stop her from signaling for help and again threatened to hurt or kill her.

According to McMullen, Lyons demanded that she give him her purse and attempted to pull it from her neck. When she told him she had no money, Lyons said he just wanted a ride. Lyons forced McMullen into the driver's seat and he moved into the passenger's seat. He told McMullen to drive away. After pulling out of the store parking lot, McMullen stopped in front of a passing police car. She then exited the vehicle and ran toward the police car.

Police Officer Fred Martin testified that, on the morning of the incident, he was responding to a call from his dispatcher concerning a possible domestic battery in the grocery store parking lot. Upon arriving at the location, he saw an automobile cross the median and stop near his patrol car. McMullen quickly exited the vehicle and shouted, "Oh, my God, I'm so glad you came by. This guy pushed me in my car and made me drive away." McMullen then entered the patrol car.

Officer Martin testified McMullen appeared frightened and she spoke quickly. He noticed she had abrasions and scratches on her neck, shoulder, and arm. Based on her reaction and statements, Officer Martin

believed she did not know Lyons. After speaking further with McMullen, Martin approached Lyons and asked if he knew McMullen's name. Defendant told Officer Martin her name was "Amy," but was unable to provide her last name.

Police Officer Brian Brown questioned Lyons about the incident. Lyons told Brown he and McMullen were boyfriend and girlfriend and they had gotten into an argument at the grocery store. Lyons denied hitting McMullen. Officer Brown testified Lyons was unable to tell him McMullen's name.

Michael Lusher, a taxi driver, testified he was in his taxi in the grocery store parking lot at the time of the incident. According to Lusher, he saw Lyons holding open the door of a car parked in the fire lane. Lusher testified Lyons was hitting and pushing a woman into the car. Each time the woman attempted to exit the car, Lyons pushed her back in. Lusher testified he also heard a car horn honking and the woman yelling for help.

Lyons testified he knew McMullen prior to the incident in question. He stated they had first met in January of 1998 at his uncle's house. On that occasion, Lyons claimed to have sold McMullen a half gram of cocaine. According to Lyons, McMullen had called him on several other occasions to arrange cocaine purchases and they completed the drug transactions in several different parking lots.

Prior to trial, Lyons indicated he intended to present evidence to corroborate his claim that he and McMullen had engaged in drug transactions in the past. The evidence would have included the testimony of at least one other individual who had also allegedly sold drugs to McMullen in parking lots on previous occasions. The trial court granted the State's motion *in limine* to exclude this evidence, finding the evidence was collateral to the issues in this case.

During his trial testimony, Lyons stated McMullen had telephoned him and asked whether he had any cocaine to sell her. Lyons informed McMullen he did not, but said he would call her if he was able to obtain some. At approximately 2:30 the next morning, Lyons telephoned McMullen and told her he had some cocaine. He instructed her to meet him at the grocery store if she wanted to buy some. Lyons' uncle then drove him to the grocery store.

According to Lyons, when he arrived at the store, he went inside to telephone a taxicab. He then exited the store, returned to his uncle's car, and waited. Approximately 15 minutes later, Lyons went inside the store to phone the taxi company again. As Lyons returned to the parking lot, he observed McMullen drive up.

According to Lyons, when McMullen exited her vehicle, he approached her and told her to get back in the vehicle. Lyons got in the passenger's seat. McMullen told him she wished to purchase a half gram of cocaine. Lyons told McMullen that the cocaine was cut into larger portions. Lyons told McMullen he would sell her a larger portion at a reduced rate of $150. Upon hearing this information, McMullen entered the grocery store and stayed for approximately one minute. When she returned, he gave her the cocaine, and she gave him $85. Lyons inquired about the remainder of the money, and McMullen said she would pay him the next day. Lyons testified he then returned the $85 to McMullen and a struggle ensued over the cocaine. According to Lyons, he was trying to grab her hand when the taxi driver came into the parking lot. McMullen was yelling, and Lyons was cursing at her. Lyons claimed he blew the car horn to alert the taxi driver he wanted the cab.

Lyons testified he told McMullen he believed the taxi driver had called police. As a result, McMullen and Lyons decided to tell the police they were boyfriend and

girlfriend and were just having an argument. As part of the story, Lyons would call McMullen "Ashley" and she would call him "Dee." After McMullen stopped in front of the patrol car, Lyons told the officers their agreed-upon story.

Lyons also testified he had been convicted of two felony offenses in 1989 as well as two felony offenses in 1993. Prior to testifying, Lyons made an oral motion *in limine* to preclude evidence of his prior convictions as detailed by the following colloquy:

"MR. LAWRENCE [assistant public defender]: I'd like to make an oral motion *in limine* before my client testifies. It's regarding my client's prior record. It's my understanding that my client has a burglary charge and a theft *** charge from 1989 *** he also has two aggravated battery convictions from 1993. ***

*** I would ask that [these convictions] not be allowed for impeachment because I believe the prejudice would certainly outweigh any benefit that they would bring to the case.

THE COURT: Let me stop you.

MR. LAWRENCE: My client is charged with aggravated battery.

THE COURT: I do the Steigmann rule.

MR. LAWRENCE: Just a felony.

THE COURT: There would be four felonies reported to the jury. I mean maybe I should have told you that before. But I didn't know if you still wanted to object. I mean ... if you don't do that, I'm not sure that the weighing process is even necessary if they qualify under *Montgomery* because *** the jury doesn't know what they are.

MR. LAWRENCE: All right.

THE COURT: I mean I appreciate you still want to have it out, but if they just know that he has four felonies, how does the prejudicial value outweigh the probative value *** when they don't know what they are?

MR. LAWRENCE: Okay. I didn't realize that you allowed us to do it that way, which is fine."

The remainder of the evidence presented at trial included the testimony of a grocery store employee. He

testified that on the morning of the incident Lyons entered the store twice to telephone a taxi company.

Following the close of evidence, the jury convicted Lyons of all charged offenses. The trial court sentenced him to a 10-year term of imprisonment.

Lyons appealed, arguing, in part, that the trial court erred in using mere-fact impeachment and in granting the State's motion *in limine* concerning evidence of McMullen's prior drug purchases. The appellate court affirmed, holding that Lyons, "through his counsel, explicitly agreed to the court's use of the mere-fact impeachment method in this case *** [and therefore] he cannot now complain about the court's decision to use the precise method he agreed to at trial." *Lyons*, 315 Ill. App. 3d at 965. As to the evidence excluded by the State's motion *in limine*, the appellate majority reasoned that "[w]hether McMullen had previously purchased drugs from other individuals in various parking lots was wholly irrelevant to the underlying issues in this case." *Lyons*, 315 Ill. App. 3d at 963.

Without commenting on the mere-fact issue, the dissenting justice concluded that the trial court improperly granted the State's motion *in limine*. In particular, the dissent reasoned:

"[E]vidence that McMullen may have been engaged in a drug purchase at the time of the incident is clearly relevant to the issues of the case and is not a mere contradiction of her in-court statement. Defendant did not commit the offense of vehicular invasion if he entered McMullen's vehicle with her permission to sell her drugs. ***

* * *

*** The evidence complained of should have been admitted to show McMullen's [possible] motive in accusing [Lyons], that motive being that she did not want to admit that she was engaged in a drug purchase." *Lyons*, 315 Ill. App. 3d at 966-68 (Cook, P.J., dissenting).

Lyons appeals, contending the trial court committed

reversible error in employing mere-fact impeachment and in granting the State's motion *in limine*.

## II. ANALYSIS

The primary issue presented in these consolidated appeals concerns the trial court's use of mere-fact impeachment. Under the mere-fact method of impeachment, the jury is informed of the fact that the witness committed a past crime, not the precise offense. *People v. Atkinson*, 186 Ill. 2d 450, 457 (1999). This court expressly rejected the mere-fact method of impeachment in two recent cases: *Atkinson*, 186 Ill. 2d 450, and *People v. Cox*, 195 Ill. 2d 378 (2001). The rationale behind our rejection of the mere-fact method was lucidly set out in *Atkinson*:

> "Under the mere-fact approach, the jury hears direct proof that the accused has been convicted of a felony, the exact nature of which is excluded from the jury. This bare announcement unavoidably invites jury speculation about the nature of the prior crime. There is a potential danger that the jury would speculate that the defendant was previously convicted of a more serious crime. Consequently, the mere-fact approach may result in unfair prejudice to the defendant arising from jury speculation as to the nature of the prior unnamed crime." *Atkinson*, 186 Ill. 2d at 459.

There is no danger of such speculation when a trial court uses the balancing test for impeachment of a witness through the use of prior convictions that was first adopted by this court in *People v. Montgomery*, 47 Ill. 2d 510 (1971). Under *Montgomery*, evidence of a prior conviction is admissible for impeachment purposes if: (1) the witness' crime was punishable by death or imprisonment for more than one year, or the crime involved dishonesty or false statement regardless of the punishment; (2) the witness' conviction or release from confinement, whichever date is later, occurred less than 10 years from the date of trial; and (3) the danger of unfair prejudice does not substantially outweigh the probative value of the conviction. *Montgomery*, 47 Ill. 2d at 516. As we stated in *Atkinson*,

"the possibility of resulting prejudice to the defendant from revealing the nature of the prior conviction is controlled by the judicial balancing test set forth in the third prong of *Montgomery*. Under that test, if prejudice to the defendant substantially outweighs the probative value of admitting the impeachment evidence, the prior conviction must be excluded." *Atkinson*, 186 Ill. 2d at 459.

Accordingly, we directed that "trial courts should not consider the mere-fact method of impeachment" (*Atkinson*, 186 Ill. 2d at 461) and the trial court commits error by using the mere-fact approach (*Atkinson*, 186 Ill. 2d at 457-58).

More recently, in *Cox*, this court reiterated its position on the use of mere-fact impeachment. We stated:

"The State attempts to limit our holding in *Atkinson*. *** In *Atkinson*, however, we held that 'trial courts should not consider the mere-fact method of impeachment.' [Citation.] We find no suggestion in this unequivocal language that a trial court's discretion encompasses mere-fact impeachment. Additionally, the State contends *Atkinson* only governs cases in which a trial court declined to consider a defendant's request for mere-fact impeachment. Again, we see no such limitation.

Admitting the mere fact of the defendant's prior felony convictions was error." (Emphasis omitted.) *Cox*, 195 Ill. 2d at 386-87.

There is no question the trial court in each of these three consolidated cases committed error by employing mere-fact impeachment. See *Cox*, 195 Ill. 2d at 386 (*Atkinson* applies retroactively to all cases pending at the time the opinion was announced by this court). Nonetheless, as argued by the State and determined by the appellate court panels, none of the defendants properly preserved the issue for review. In each case, however, the defendant's complicity in this trial error varied. In *Harvey*, defense counsel failed to object to the use of the mere-fact method of impeachment. In *Barefield*, defense counsel requested use of the mere-fact method. In *Lyons*, defense counsel agreed to the use of the mere-fact

method. The factual distinction between a defendant's failure to bring an error to the attention of the trial court, as in *Harvey*, and a defendant's active participation in the direction of the proceedings, as in *Barefield* and *Lyons*, carries with it a legal significance.

A defendant's failure to object at trial and to raise the issue in a post-trial motion operates as a waiver of the right to raise the issue as a ground for reversal on review. *People v. Herrett*, 137 Ill. 2d 195, 209 (1990). The plain error rule (134 Ill. 2d R. 615(a)) provides a " ' "narrow and limited exception" ' " (*People v. Hampton*, 149 Ill. 2d 71, 100 (1992), quoting *People v. Szabo*, 113 Ill. 2d 83, 94 (1986), quoting *People v. Pastorino*, 91 Ill. 2d 178, 188 (1982) and is applied as a means of ameliorating the harshness of strict application of the waiver rule (*People v. Godsey*, 74 Ill. 2d 64, 72 (1978)).

This court has acknowledged, however, that a defendant's invitation or agreement to the procedure later challenged on appeal "goes beyond mere waiver." *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001). Indeed, Illinois courts sometimes refer to the issue as one of estoppel. See, *e.g.*, *People v. Burage*, 23 Ill. 2d 280, 283 (1961); *People v. Sparks*, 314 Ill. App. 3d 268, 272 (2000); *People v. Satterfield*, 195 Ill. App. 3d 1087, 1100-01 (1990); *People v. Reed*, 51 Ill. App. 3d 479, 482 (1977). That is, "[u]nder the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003), citing *Villarreal*, 198 Ill. 2d at 227-28; *People v. Segoviano*, 189 Ill. 2d 228, 240-41 (2000); *People v. Lowe*, 153 Ill. 2d 195, 199 (1992). To permit a defendant to use the exact ruling or action procured in the trial court as a vehicle for reversal on appeal "would offend all notions of fair play" (*Villarreal*, 198 Ill. 2d at 227), and "encourage defendants to become duplicitous" (*Sparks*, 314 Ill. App. 3d at 272).

Illinois courts have applied the invited error doctrine in numerous cases to bar a defendant from claiming error in the admission of improper evidence where the admission was procured or invited by the defendant. *E.g.*, *People v. Caffey*, 205 Ill. 2d 52, 114 (2001); *People v. Payne*, 98 Ill. 2d 45, 49-50 (1983); *People v. Abdullah*, 336 Ill. App. 3d 940, 950 (2002); *People v. Bridges*, 273 Ill. App. 3d 773, 779 (1995). In similar fashion, our appellate court has held that a defendant cannot claim, on appeal, that the use of mere-fact impeachment was error where the defendant requested or agreed to its use in the trial court. *People v. Davis*, 319 Ill. App. 3d 572, 574 (2001); *People v. Williams*, 317 Ill. App. 3d 945, 950 (2000); *Sparks*, 314 Ill. App. 3d at 272-73. We noted this same rule with regard to mere-fact impeachment in *Cox*, where we stated:

> "We do not reach the question of whether a defendant can challenge an *Atkinson* violation when he requests or agrees to improper mere-fact impeachment. We note, however, 'an accused may not ask the trial court to proceed in a certain manner and then contend in a court of review that the order which he obtained was in error.' *People v. Lowe*, 153 Ill. 2d 195, 199 (1992); accord *People v. Payne*, 98 Ill. 2d 45, 50 (1983) (a defendant who invites or acquiesces to the admission of improper evidence cannot complain)." *Cox*, 195 Ill. 2d at 387 n.2.

As stated above, Barefield requested and Lyons agreed to mere-fact impeachment. Accordingly, neither defendant may now raise on appeal the error that they invited in the trial court. See *People v. Smith*, 71 Ill. 2d 95, 104 (1978) (neither rule 615(a) nor Rule 451(c) covers the situation where a defendant complains about a tendered instruction); accord *Villarreal*, 198 Ill. 2d at 227-28.

Nevertheless, in regard to *Harvey*, pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)), this court may review an argument not properly preserved if plain error has occurred. *People v. Chapman*, 194 Ill. 2d

186, 225-26 (2000). The plain error rule allows a reviewing court to consider a trial error not properly preserved when "(1) the evidence in a criminal case is closely balanced or (2) where the error is so fundamental and of such magnitude that the accused was denied a right to a fair trial." *People v. Byron*, 164 Ill. 2d 279, 293 (1995); 134 Ill. 2d R. 615(a). In *Harvey*, we will address each of these inquiries, and then address the remaining issues raised in the Barefield and Lyons appeals.

## A. People v. Harvey: Plain Error

Considering the first prong of the plain error rule, we have examined the record and find that the evidence admitted in Harvey's case cannot reasonably be regarded as closely balanced. There was extensive testimony from Eunice Clark, who provided background on the conflict between the rival factions of the Unknown Vice Lords. Clark also stated she observed Harvey, along with several other individuals at the scene, place the victims in a vehicle and drive away. According to Clark, the victims and assailants were members of opposing factions. In addition to this direct identification evidence, there was compelling testimony by police officers who detailed the circumstances behind their taking Harvey into custody and his later leading them to the bodies of the victims. This overwhelming evidence was corroborated by Harvey's pretrial statement. Harvey's later recantation of his pretrial statement did not make the evidence of his guilt any less convincing. Thus, this prong of the plain error rule is not satisfied by the evidence presented in People v. Harvey.

The second prong of the plain error rule is invoked only in those exceptional circumstances where, despite the absence of objection, application of the rule is necessary to preserve the integrity and reputation of the judicial process. *People v. Herrett*, 137 Ill. 2d 195, 210 (1990). Here, the error is not of such a character that the

second prong of the plain error rule must be invoked to preserve the integrity and reputation of the judicial process. While it is true that we admonished our circuit courts in both *Atkinson* and *Cox*, and now again in this case, that mere-fact impeachment is not to be employed, we have never indicated that its use *requires* the reversal of a subsequent conviction.[1] To the contrary, in *Cox* we only concluded that a reversal was necessary after examining the other admitted evidence in that case. We note that "Rule 615(a) does not operate in the nature of a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court." *People v. Precup*, 73 Ill. 2d 7, 16 (1978).

In sum, the facts do not amount to an "exceptional circumstance" so as to warrant reversal under the second prong of the plain error rule notwithstanding our extreme disapproval of the trial court's use of mere-fact impeachment. The plain error rule, therefore, may not be invoked in this case. Accordingly, Harvey is barred by his procedural default from raising the error as a ground for reversal.

## B. People v. Barefield: One Act, One Crime

Barefield also contends that his convictions and sentence in this case violate the one-act, one-crime doctrine of *People v. King*, 66 Ill. 2d 551, 566 (1977). Barefield argues that the four convictions for unlawful possession of a stolen motor vehicle should be vacated because the convictions are predicated on the same acts that formed the basis for the aggravated possession offense. Initially, we note that defendant raised this argument for the first time on appeal and, as the appellate

---

[1]As admitted by the defendants here, the mere-fact method is often favored by defendants who would rather the jury not be informed of the particular nature of their prior convictions.

court correctly noted, the issue is waived. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, as noted previously, plain errors affecting substantial rights may be reviewed on appeal. 134 Ill. 2d R. 615(a); *People v. Hicks*, 181 Ill. 2d 541, 544-45 (1998). Unlike the mere-fact impeachment issue, an alleged one-act, one-crime violation and the potential for a surplus conviction and sentence affects the integrity of the judicial process, thus satisfying the second prong of the plain error rule. See *People v. Flynn*, 341 Ill. App. 3d 813, 829 (2003); *People v. Pearson*, 331 Ill. App. 3d 312, 321 (2002); and *People v. Moshier*, 312 Ill. App. 3d 879, 881 (2000). The plain error rule allows the review of a waived error if either of the two prongs are satisfied. *Byron*, 164 Ill. 2d at 293; 134 Ill. 2d R. 615(a). Since the second prong is met here, we need not discuss the first, and, despite Barefield's waiver, we will address his argument.

In *King*, this court held that a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act. *King*, 66 Ill. 2d at 566. We reaffirmed and clarified the *King* rule in *People v. Rodriguez*, 169 Ill. 2d 183 (1996), where we noted that there are two steps to a *King* analysis. *Rodriguez*, 169 Ill. 2d at 186.

First, the court ascertains whether the defendant's conduct consisted of a single physical act or separate acts. *Rodriguez*, 169 Ill. 2d at 186. "Multiple convictions are improper if they are based on precisely the same physical act." *Rodriguez*, 169 Ill. 2d at 186. If the court determines that the defendant committed multiple acts, the court moves on to the second step and determines whether any of the other offenses are lesser-included offenses. *Rodriguez*, 169 Ill. 2d at 186. If any of the offenses are lesser-included offenses, then, under *King*, multiple convictions are improper. *Rodriguez*, 169 Ill. 2d at 186. If none of the offenses are lesser-included of-

fenses, then multiple convictions may be entered. *Rodriguez*, 169 Ill. 2d at 186.

Therefore, we must first determine whether Barefield's conduct consisted of separate acts or a single physical act. *Rodriguez*, 169 Ill. 2d at 186. Defendant was charged with four counts of unlawful possession of a stolen motor vehicle (625 ILCS 5/4—103(a)(1) (West 1996)) for possessing four separate vehicles within one year, and with one count of aggravated possession of all four stolen motor vehicles (625 ILCS 5/4—103.2(a)(1) (West 1996)). Under *King*, the definition of an "act" is "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566.

Applying *King* to the present case, we conclude that the unlawful possession of a stolen motor vehicle offenses and the aggravated possession offense were based on the same physical act. While aggravated possession requires proof of an additional element, namely that the defendant possessed three or more stolen vehicles at the same time or within a one-year period, this is not a separate act of the defendant. This is merely an element of an additional offense that can be established by defendant's overlapping acts of possession.

The dissenting justice in the appellate court correctly stated:

"The majority justifies its failure to comply with the *King* 'one act, one crime' rule, because 'in this case, the two offenses cannot be based on precisely the same act because the aggravated possession requires the unlawful possession of multiple stolen vehicles during a period of time.' [Citation.] I disagree. What difference does it make that simple unlawful possession does not require that the possession continue for any particular period of time? When defendant possessed these vehicles during the period of one year, he thereby committed aggravated possession, and that same possession is relied upon by the State in the four counts of simple possession. This is not a case where the State can show simple possession at a different time than during the

one-year period in which it has shown aggravated possession. This case accordingly falls within the 'same physical act' test of *King*." *People v. Barefield*, No. 4—98—0838 (2000) (unpublished order under Supreme Court Rule 23) (Cook, P.J., dissenting).

In short, the State found defendant to be in possession of four stolen motor vehicles and was able to carve distinct charges out of these same possessions—an aggravated charge based on his possession of this number of vehicles within a one-year period and simple possession charges for each vehicle. The time that passed was not an overt or outward manifestation of defendant. It was an external factor that allowed the state to charge defendant with a separate offense. By analogy, assume that the legislature enacts a new type of aggravated possession of a stolen motor vehicle, making the simple possession charge "aggravated" if a blue vehicle is stolen. If a defendant commits the one act of possessing a stolen blue vehicle, the State could charge him with both simple possession and aggravated possession. The color of the car, however, would not be an overt or outward manifestation by the defendant. It would be an external factor allowing the State to charge a different offense. If the defendant was convicted of both offenses, however, the simple possession would have to be vacated because it would be based on precisely the same physical act as the aggravated possession.

Because Barefield's unlawful possession counts are predicated on the same set of acts as his aggravated possession count, we need not and do not reach the second step of *King* to determine whether the unlawful possession count is a lesser-included offense of the aggravated possession count. "Multiple convictions are improper if they are based on precisely the same physical act[s]." *Rodriguez*, 169 Ill. 2d at 186. Accordingly, Barefield's four convictions for unlawful possession of a stolen motor vehicle constituted plain error and must be vacated.

## C. People v. Lyons: Motion *in limine*

Finally, we turn to the motion *in limine* in Lyons' case. Lyons sought to call a certain witness who would testify that he had sold drugs to McMullen in store parking lots on many occasions. The State moved *in limine* to bar such evidence.

Generally, evidentiary motions, such as motions *in limine*, are directed to the trial court's discretion, and reviewing courts will not disturb a trial court's evidentiary ruling absent an abuse of discretion. *People v. Jackson*, 182 Ill. 2d 30, 78-79 (1998). Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence. *People v. Lewis*, 165 Ill. 2d 305, 329 (1995). A trial court may reject offered evidence on grounds of irrelevancy if it has little probative value due to its remoteness, uncertainty, or possibly unfair prejudicial nature. *People v. Ward*, 101 Ill. 2d 443, 455 (1984).

Lyons maintains the trial court abused its discretion because the excluded evidence would have shown that McMullen had purchased drugs from other individuals in various parking lots in the past. Specifically, defendant contends the evidence was relevant to impeach McMullen's version of the event and was probative of a possible motive for McMullen to lie about the incident.

Here, the trial court concluded that Lyons could testify that he had sold McMullen drugs on previous occasions, as such testimony could relate to motive or familiarity between the two witnesses, but that Lyons would not be allowed to impeach McMullen with corroborative evidence from other individuals that they had sold drugs to McMullen in the past. The trial court reasoned that evidence of McMullen's prior drug purchases from other individuals was not relevant to the crimes charged and presented a collateral issue.

We agree with the trial court and the appellate court

that the excluded evidence did not bear on the determinative issues in the case. Moreover, Lyons was not precluded from testifying that he had sold drugs to McMullen in the past, thus establishing familiarity and challenging McMullen's claim that she did not know Lyons. Accordingly, we cannot say that the trial court abused its discretion by granting the State's motion *in limine*.

## III. CONCLUSION

For the reasons expressed above, we hold that the trial court erred in each of these three consolidated cases by using mere-fact impeachment. Nevertheless, the trial court's improper use of mere-fact impeachment did not rise to the level of plain error in defendant Harvey's case and was invited by defendants Barefield and Lyons. We, therefore, affirm the appellate court's judgment in *Harvey*, No. 1—99—0637 (unpublished order under Supreme Court Rule 23). We further conclude that Barefield's multiple convictions and concurrent sentences violate the *King* one-act, one-crime rule. We therefore affirm in part and reverse in part the judgments of the circuit and appellate courts in *Barefield*, No. 4—98—0838 (unpublished order under Supreme Court Rule 23), and remand the cause to the circuit court with directions that it vacate Barefield's four convictions for unlawful possession of a motor vehicle. Lastly, because the trial court did not err by excluding evidence in *Lyons*, 315 Ill. App. 3d 959, we affirm the appellate court's judgment in that case as well.

*No. 89106—Affirmed.*
*No. 89760—Judgments affirmed*
*in part and reversed in part;*
*cause remanded with directions.*
*No. 90278—Affirmed.*

CHIEF JUSTICE McMORROW, specially concurring:

I am in agreement with the conclusion of the majority that the multiple convictions and concurrent sentences imposed by the circuit court upon defendant Barefield violate the one-act, one-crime rule established by this court in *People v. King*, 66 Ill. 2d 551 (1977). Accordingly, it is appropriate for this court to remand Barefield's cause to the circuit court with directions that it vacate Barefield's four convictions for unlawful possession of a motor vehicle.

I am also in agreement with the majority that in the cause of defendant Lyons, the circuit court did not err in granting the State's motion *in limine* to exclude evidence that the victim had allegedly engaged in prior drug purchases.

I also agree with the result of the majority opinion that the use of the mere-fact method of impeachment by the circuit court in each of these three consolidated cases did not constitute plain error. However, I arrive at this conclusion on a basis different from that of the majority. I continue to adhere to my previously enunciated position that it should be within the wide discretion traditionally afforded the circuit court to permit the use of mere-fact impeachment if the court determines that it is the more appropriate impeachment method. For the reasons more fully stated in the dissenting opinion in *People v. Atkinson*, 186 Ill. 2d 450, 464 (1999) (Rathje, J., dissenting, joined by McMorrow, J.), and my separate opinion in *People v. Cox*, 195 Ill. 2d 378, 392 (2001) (McMorrow, J., dissenting), it remains my belief that *Atkinson*, which held that, as a matter of law, it is always improper to use the mere-fact approach to impeach a testifying defendant, "unwarrantedly departed from our traditional jurisprudence by 'remov[ing] from the trial court the discretion to determine whether or to what extent evidence is admissible.' " *Cox*, 195 Ill. 2d at 393 (McMorrow J., dis-

senting), quoting *Atkinson*, 186 Ill. 2d at 472 (Rathje, J., dissenting, joined by McMorrow, J.).

JUSTICE RARICK joins in this special concurrence.